Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
  kwasniewski@braunhagey.com
Tracy O. Zinsou, Esq. (SBN: 295458)
  zinsou@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR DEFENDANT
LESSEREVIL LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TWYLA COGSWELL, individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LESSEREVIL LLC,<br><br>Defendant. | **Case No. 1:23-CV-00311-ADA-BAM**<br><br>**DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 5, 2023<br>Time: 1:30pm<br>Judge: Hon. Ana de Alba<br>Courtroom: 1<br><br>Complaint Filed: March 1, 2023 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 5, 2023 in Courtroom 1 of the above-entitled Court, Defendant LesserEvil LLC ("LesserEvil") will and hereby does move for an order dismissing the claims asserted by Plaintiff Twyla Cogswell.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, the Declaration of David H. Kwasniewski, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated:  April 28, 2023

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: _____
      Matthew Borden

*Attorneys for Defendant LesserEvil LLC*

Case No.  1:23-CV-00311-ADA-BAM

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................................... II

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

    A.    The Parties .......................................................................................................... 2

    B.    Plaintiff's Claims ................................................................................................. 3

ARGUMENT ....................................................................................................................... 5

I.    PLAINTIFF'S CLAIMS ARE IMPLAUSIBLE ............................................................. 5

    A.    It Is Not Plausible That Plaintiff Selectively Read the Label So as to Miss the Portion Most Significant to Her: The Nutrition Facts .......................................................... 5

    B.    Plaintiff Does Not Allege That Any Statement on the Label Is False ................... 7

        1.    The Statements That Plaintiff Claims Misled Her Are Puffery ................. 8

        2.    Plaintiff Does Not Allege What She Thought Any of the Statements at Issue Meant to Her ...................................................................................... 13

    C.    Plaintiff's Efforts to Aggregate a Bunch of Truthful Statements into a Supposedly Misleading One Fail as a Matter of Law ............................................................... 13

II.    LESSEREVIL HAS NOT COMMITTED ANY TECHNICAL FDA LABELING VIOLATIONS ........................................................................................ 15

    A.    LesserEvil Complies with 21 C.F.R. § 101.13(h)............................................... 16

    B.    LesserEvil Complies with 21 C.F.R. § 101.65(d)(2)(i)(F) .. **Error! Bookmark not defined.**

III.    PLAINTIFF'S CLAIMS ARE PREEMPTED ............................................................. 17

    A.    Federal Preemption of State Law Labeling Claims**Error! Bookmark not defined.**

IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT ................. 18

V.    PLAINTIFF'S ASSORTMENT OF OTHER CLAIMS FAILS ..................................... 19

A.    Plaintiff Does Not State a Claim for "Unjust Enrichment". **Error! Bookmark not defined.**

B.    Plaintiff Does Not State a Claim under the Consumer Protection Statutes of Other States ....................................................................**Error! Bookmark not defined.**

VI.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF ........................... 19

CONCLUSION .................................................................................................................. 20

1

## **TABLE OF AUTHORITIES**

2
**PAGE(S)**

3

## **CASES**

4
*Ackerman v. Coca Cola, Co.*,
   2010 WL 2925955 (E.D.N.Y. 2010) ...................................................................... 19

5
*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ......................................................... 13

6
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 6

7
*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ................................................................................................. 6

8
*Atari Corp. v. 3D0 Co.*,
   1994 WL 723601 (N.D. Cal. 1994) ........................................................................ 13

9
*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) .................................................................................. 21

10
*Bobo v. Optimum Nutrition, Inc.*,
   2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ....................................................... 7

11
*Butts v. Cibo Vita, Inc.*,
   2023 WL 2588012 (E.D. Cal. Mar. 20, 2023) .......................................... 16, 17, 19

12
*Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*,
   447 U.S. 557 (1980) ............................................................................................... 19

13
*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d. 1111 (N.D. Cal. 2010) ............................................................... 19

14
*Cheslow v. Ghiradelli Chocolate Co.*,
   445 F. Supp. 3d 8 (N.D. Cal. 2020) ................................................................. 7, 16

15
*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
   142 S.Ct. 1464 (2022) ........................................................................................... 19

16
*Clarkv. Perfect Bar, LLC*,
   2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ............................................. 2, 14, 15

17
*Clark v. Perfect Bar, LLC*,
   816 F. App'x 141 (9th Cir. 2020) ..................................................................... 18, 19

18
*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) ................................................................................... 9

19
*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
   911 F.2d 242 (9th Cir.1990) .................................................................................. 10

20
*Cordes v. Boulder Brands USA, Inc.*,
   2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........................................................ 21

21
*Cytyc Corp. v. Neuromedical Sys., Inc.*,
   12 F. Supp. 2d 296 (S.D.N.Y. 1998) ..................................................................... 13

22
*Davidson v. Kimberly–Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................. 21

23

24

25
*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ........................................................................... 16, 20

26
*Edmunson v. Procter & Gamble Co.*,
   537 F. App'x 708 (9th Cir. 2013) ........................................................................... 10

27

28

MPA ISO DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS

*Effinger v. Ancient Organics LLC*,
2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) ............................................................. 18

*Finney v. Ford Motor Co.*,
2018 WL 2552266 (N.D. Cal. June 4, 2018) ............................................................... 13

*Fraker v. KFC Corp.*,
2007 WL 1296571 (S.D. Cal. April 30, 2007) ............................................................ 11

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ........................................................................................... 7

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
155 F. Supp. 3d 670 (S.D. Tex. 2015) ....................................................................... 13

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.*,
708 F. Supp. 2d 1209 (D.N.M. 2010) ........................................................................ 13

*Hartmann v. Cal. Dept. of Corrections*,
707 F. 3d 1114 (9th Cir. 2013) ..................................................................................... 6

*Hawkings v. Sacramento Cnty. Dep't of Child & Fam. Adult Servs.*,
2023 WL 316569 (E.D. Cal. Jan. 19, 2023) ................................................................. 6

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ....................................................................................... 18

*Horti v. Nestle HealthCare Nutrition, Inc.*,
2022 WL 2441560 (N.D. Cal. July 5, 2022) .............................................................. 16

*In re 5-Hour Energy Mktg. and Sales Practices Litig.*,
2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ............................................................. 7

*In re Boston Beer Co.*,
198 F.3d 1370 (Fed. Cir. 1999) .................................................................................. 13

*In re Coca-Cola Prods. Marketing & Sales Practices Litig.*, No. 20-15742,
2021 WL 3878654 (9th Cir. 2021) ............................................................................. 21

*Inspired By Design, LLC v. Sammy's Sew Shop, LLC*,
2016 WL 6093778 (D. Kan. Oct. 19, 2016) .............................................................. 13

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) .................................................................................... 12

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) ................................................................................. 1, 9

*Nikkal Indus., Ltd. v. Salton, Inc.*,
735 F. Supp. 1227 (S.D.N.Y. 1990) ........................................................................... 13

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ....................................................................... 12

*Oestreicher v. Alienware Corp.*,
322 Fed. App'x 489 (9th Cir. 2009) ........................................................................... 13

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ....................................................................... 14

*Shaker v. Nature's Path Foods, Inc.*,
2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ........................................................... 13

*Silver v. BA Sports Nutrition*,
2020 WL 2992873 (N.D. Cal. June 4, 2020)..................................................... 2, 14, 16

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011).................................................................................................... 19

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ..................................................................................... 9

MPA ISO DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS

*Sustainable Sourcing, LLC v. Brandstorm, Inc.*,
  2016 WL 3064055 (D. Mass. May 31, 2016) ................................................................. 13
*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................................... 20
*Truxel v. General Mills Sales, Inc.*,
  2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ...................................................... 2, 14, 15
*Tylka v. Gerber Prods. Co.*,
  1999 WL 495126 (N.D. Ill. July 1, 1999) ..................................................................... 12
*Vitiosus v. Alani Nutrition, LLC*,
  2022 WL 2441303 (S.D. Cal. July 5, 2022) ............................................................ 17, 21
*Vitt v. Apple Computer, Inc.*,
  2010 WL 11545683 (C.D. Cal. May 10, 2010) ................................................................ 9
*Weiss v. Trader Joe's Co.*,
  2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ................................................................ 20
*Yetter v. Ford Motor Co.*,
  2019 WL 7020348 (N.D. Cal. Dec. 20, 2019) ................................................................ 12
*Yoshida v. Campbell Soup Co.*,
  2022 WL 1819528 (N.D. Cal. May 27, 2022) ................................................................ 15

**STATUTES**

Cal. Bus. & Prof. Code §§ 17200 ........................................................................................ 5
Cal. Civ. Code §§ 1750 ........................................................................................................ 5

**REGULATIONS**

21 C.F.R. § 101.13(h) ............................................................................................... 2, 16, 17
21 C.F.R. § 101.14(a)(1) ...................................................................................................... 18
21 C.F.R. § 101.65(d) ............................................................................................... 2, 17, 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Defendant LesserEvil LLC respectfully submits this Memorandum in support of its Motion

2    to Dismiss.

3                                    **<u>INTRODUCTION</u>**

4    LesserEvil sells organic, sustainable, and delicious snacks. Plaintiff has sued LesserEvil for

5    false advertising without identifying any statement that is false. Plaintiff claims that she bought two

6    types of popcorn and one type of puffs because she read language on the back of the packages

7    including "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer

8    Calories," or "Nutrient Dense," and that these words made her believe that the snacks contained less

9    than 3 grams of saturated fat per serving. Her claims lack merit and should be dismissed without

10   leave to amend.

11   LesserEvil accurately includes the saturated fat content in the Nutrition Facts, which can be

12   found on the same panel immediately below, and right next to the language Plaintiff claims caused

13   her purchases. To the extent that Plaintiff really cared about saturated fat content, it is not plausible

14   that she studiously ignored the best source of this information (the Nutrition Facts) to cobble

15   together an unreasonable belief based on a hodgepodge of language from other places on the label.

16   Even if these phrases were Plaintiff's only referent for saturated fat content, they are not

17   false. The language "33% More Fiber," "20% Fewer Calories," and "40% Less Fat," accurately

18   compares the popcorn to "typical oil popped popcorn containing 10G fat, 3G fiber, and 150 calories

19   per serving." (Compl. ¶ 5.) The other claims are non-actionable puffery because they have no

20   objective meaning. *See, e.g., Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052-53

21   (9th Cir. 2008) (ads that defendants "would deliver 'flexibility' in their 'cost-per-copy' contracts"

22   and "that they would lower copying costs for consumers" were puffery because they were not

23   quantifiable). Statements such as "healthier" cannot be tested because there is no comparator or

24   rubric. It is unclear how any of the statements at issue could plausibly cause Plaintiff to form a

25   belief about the saturated fat per serving. LesserEvil provided Plaintiff with truthful information

26   about the saturated fat content. She was free to use, or ignore, it as she saw fit.

27   Courts have begun to reject Plaintiff's theory that someone can be tricked about the

28   "healthiness" of a product when the label truthfully discloses the nutritional facts. In *Clark v.*

*Perfect Bar, LLC*, the Court dismissed plaintiffs' claims that they were misled into thinking that a protein bar was "healthy," when it supposedly contained "excessive sugar." 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018). The Court reasoned that plaintiffs could simply look at the ingredients to "decide for themselves how healthy or not the sugar content would be" and that they could not have "reasonably overestimate[d] the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar." *Id*. Because "the honey/sugar content was properly disclosed—that is the end of it—period." *Id*.

Similarly, in *Truxel v. General Mills Sales, Inc*., the Court rejected plaintiffs' contention that sugar in cereals rendered health and wellness claims misleading because "the actual ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them." 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019). In *Silver v. BA Sports Nutrition*, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020), the Court dismissed claims that a sports beverage could mislead consumers about the sugar content, which was accurately stated in the Nutrition Facts. These decisions, and many others, recognize that allowing such claims would subject companies to protean labeling requirements that change based on plaintiffs' lawyers' shifting contentions about what they consider healthy. The same analysis is dispositive here.

All the claims are separately barred by the First Amendment, which precludes using the U.S. Courts to restrain truthful speech. Plaintiff cannot identify any government interest to support her proposed content-based restriction on speech, which cannot survive strict scrutiny.

Plaintiff's other claims fail. LesserEvil did not commit a technical FDA labeling violation; Plaintiff selectively reads only portions of 21 C.F.R. § 101.13(h) and 21 C.F.R. § 101.65(d)(2)(i)(F) instead of the entire regulation. Finally, Plaintiff's assortment of parasitic state-law theories fails for the reasons given above.

## **BACKGROUND**

### A.    The Parties

Defendant LesserEvil was founded in 2005 by Charles Coristine, who left the world of finance to pursue a more holistic lifestyle of meditation and self-awareness. The company offers

1   organic, clean, tasty and sustainable snacks that are a "better alternative to the big name snacks,"

2   while protecting the welfare of its employees. LesserEvil was recognized in 2020 as Whole Foods

3   Market's National Award Recipient for Raising the Bar for Quality.[1]

4       Plaintiff Twyla Cogswell claims she purchased Himalayan Pink Salt Popcorn, Himalayan

5   Gold Popcorn, and No Cheese Cheesiness Paleo Puffs because these products had the language

6   "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories,"

7   and "Nutrient Dense" on the label. (Compl. ¶¶ 15-17.)

8       **B.    Plaintiff's Claims**

9       The back panel of the label of one accused bag of popcorn (Compl. ¶ 25) is shown below:



[1] https://www.fooddive.com/press-release/20200309-lesserevil-receives-top-honor-for-quality-at-whole-foods-market-2020-suppli/

The back panel of one accused bag of puffs (*id.*) is shown below:



Plaintiff claims that LesserEvil engaged in "false advertising," and purports to assert claims under the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), Cal. Business & Professions Code §§ 17200 et seq., §§ 17500 et seq., the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., "unjust enrichment" and "state consumer protection statutes." The complaint alleges that Plaintiff bought the accused popcorn because the words "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense" caused her to buy the popcorn. As seen in the complaint at paragraph 25 and the associated images, the language that supposedly caused Plaintiff to buy the popcorn (pointed out by the red arrows above) appears on the back of the package, next to the Nutrition Facts—which are called out in large, bold letters—and the word "nutrient dense" does not appear on the popcorn.

The term "nutrient dense" is on the Paleo Puffs Plaintiff claims to have purchased. (Compl. ¶ 25.) However, the terms "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," which supposedly caused her to buy the popcorn, do not appear on this label.

### ARGUMENT

A complaint must be dismissed unless it has sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hartmann v. Cal. Dept. of Corrections*, 707 F. 3d 1114, 1122 (9th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court should not assume that plaintiff "'can prove facts which it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged.'" *Hawkings v. Sacramento Cnty. Dep't of Child & Fam. Adult Servs*., No. 2:20-cv-0156 DAD DB PS, 2023 WL 316569, at *2 (E.D. Cal. Jan. 19, 2023) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

## I.   PLAINTIFF'S CLAIMS ARE IMPLAUSIBLE

Plaintiff's claims are implausible for at least three separate reasons. First, she asserts that she selectively read the label to conclude from language other than the most obvious source of the saturated fat content (the Nutrition Facts) that the snacks she was purchasing had less than 3 grams of saturated fat per package. This makes no sense, especially given that the language she claims to have relied upon has nothing to do with saturated fat. Second, the language Plaintiff claims to have relied upon was paradigmatic puffery—complimentary statements about the product that cannot be proven true or false. Third, Plaintiff's attempt to aggregate truthful statements into a supposedly misleading one fails as a matter of law.

### A.   It Is Not Plausible That Plaintiff Selectively Read the Label So as to Miss the Portion Most Significant to Her: The Nutrition Facts

LesserEvil labels properly and accurately disclose all FDA required information about fat content in the location where LesserEvil is legally obligated to provide it, and consumers expect to find it, the Nutrition Facts panel. If Plaintiff cared about saturated fat to the point that it drove her snack-purchasing decisions, it is implausible that she would read the romance language right next to the Nutrition Facts and look at icons appearing right above the Nutrition Facts to figure out how

1   much saturated fat was in the product, while studiously ignoring the most obvious source of this

2   information—the Nutrition Facts.

3       Courts have dismissed claims in similar situations. *See*, *e.g.*, *In re 5-Hour Energy Mktg. and*

4   *Sales Practices Litig.*, No. ML-13-2438 PSG (PLAx), 2018 WL 11354864, at *5 (C.D. Cal. Jan. 24,

5   2018) ("the Court agrees with Defendants' observation that '[a]ny consumer who is interested in the

6   number of calories in a bottle of 5-hour ENERGY® knows immediately that' it contains four

7   calories, and 'therefore cannot be misled by solely focusing on one part of the product package they

8   assert is misleading'") (alterations in original); *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408,

9   2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("While a reasonable consumer may not

10  inspect the finest of print to clarify a misleading statement, a reasonable consumer ... cannot look at

11  only one statement to the exclusion of everything else and claim he has been misled."); *Freeman v.*

12  *Time*, *Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (plaintiff cannot claim to "review the large print and

13  ignore the qualifying language in small print" when the "qualifying language appears immediately

14  next to the representations it qualifies"); *Cheslow v. Ghiradelli Chocolate Co.*, 445 F. Supp. 3d 8,

15  20 (N.D. Cal. 2020) ("Plaintiffs and the general consuming public are not free to ignore the

16  ingredient list that does not include the words chocolate or cocoa. Accordingly, it is not plausible

17  that [plaintiffs were] deceived by the product's packaging.").

18      For example, in *Ghiradelli*, plaintiff alleged "Premium White Baking Chips" were

19  misleadingly labeled to imply that they were made of white chocolate because the packaging had a

20  photo of cookies, used the terms "chips" and "premium," and was sold in the baking aisle. The

21  Court held that, absent any actual false statement on the label, it was implausible that plaintiff read

22  the entire label except for the ingredient list, which did not include white chocolate or any of its

23  component ingredients. 445 F. Supp. 3d at 20. Plaintiff's claim here is even more implausible

24  because the Nutrition Facts are the commonly known, and statutorily required, source of the

25  information about saturated fat content, and the place where people who care would look, rather

26  than selectively reading other parts of the labels, as Plaintiff claims to have done.

27      Plaintiff's claim is separately implausible because nothing in the language she allegedly read

28  and relied on discusses saturated fat at all. Why, for example, would reading "good source of fiber"

1  cause Plaintiff to form a belief about the saturated fat content? Nor does Plaintiff explain how many

2  grams per serving of saturated fat she supposedly thought the product had as a result of reading the

3  language in question, or why that would be so.

4          Nor can Plaintiff claim that she was somehow misled into believing that the product was

5  healthier than it was. To the extent that Plaintiff actually cared how much saturated fat was in her

6  snack foods, she was free to read the Nutrition Facts and decide whether the listed amount was what

7  she wanted. That is the whole purpose of the Nutrition Facts panel; it tells consumers about the

8  nutritional content, so that they can make their own informed choices. After providing the

9  information required by the FDA, LesserEvil is under no legal obligation to tell people about how

10 much saturated fat should be in a snack food, nor guess at whatever vague, protean standards

11 Plaintiff's lawyers may seek to impose on any given day.[2]

12         For each of these reasons alone, and especially together, Plaintiff's claims are implausible.

13 **B.      Plaintiff Does Not Allege That Any Statement on the Label Is False**

14         Plaintiff's claims are implausible for the separate and independent reason that Plaintiff does

15 not allege that any of the statements that supposedly caused her to buy the snacks is untrue. The

16 statements at issue fall into two categories. The first category, "40% Less Fat," "33% More Fiber,"

17 and "20% Fewer Calories," explains that this comparison is made to "typical oil popped popcorn

18 containing 10G fat, 3G fiber, and 150 calories per serving." (Compl. ¶ 5.) Looking at the Nutrition

19 Facts (Compl. ¶ 25) confirms that these statements are true, and Plaintiff nowhere alleges otherwise.

20 The second category, "healthier" and "Nutrient Dense" are not factual statements; they are classic

21 puffery—claims that are not actionable because they cannot be objectively verified. Further,

22 Plaintiff's claims separately fail because she does not explain what she thought the terms at issue

23 meant or how what she received supposedly fell short.

24 / / /

25 / / /

26

27 _____
   [2] This is especially true given that ideas about fat have changed over time. *See*, *e.g*., "Ending the War on
   Fat," *Time Magazine* (June 12, 2014), available at https://time.com/2863227/ending-the-war-on-fat/; Nina

28 Teicholz, "America's Changing Attitudes on Fat Consumption" (Oct. 18, 2018), available at
   https://ninateicholz.com/fat-consumption-american-changing-attitudes/.

### 1. Plaintiff Does Not Allege That Any Factual Statement Is Untrue

Plaintiff claims that the language "40% Less Fat," "33% More Fiber," and "20% Fewer Calories," caused her to buy the accused popcorn. (Compl. ¶¶ 17-18.) Each of the icons bearing this information contains an asterisk, which explains that this comparison is made to "typical oil popped popcorn containing 10G fat, 3G fiber, and 150 calories per serving." (Compl. ¶ 5.) Plaintiff does not allege that any of these statements is untrue. The truth of these statement is also apparent on the face of the pleadings, as seen in the Nutrition Facts. (Compl. ¶ 25.) To the extent that Plaintiff claims that she did not read the information next to the asterisk, these statements would be puffery for the reasons given below—absent a comparator, none of these statements can be objectively verified. For similar reasons, the phrase "good source of fiber," to the extent that there is a scientific standard or definition, is also true.[3]

The Complaint also does not allege that the terms "Good Source of Fiber," and "Nutrient Dense" are untrue. For the reasons discussed below, it would be impossible to claim that these statements—which regularly appear in literature about popcorn—are untrue because they are not really capable of objective measurement. Regardless, Plaintiff cannot base a false advertising case on the statements "40% Less Fat," "33% More Fiber," "20% Fewer Calories," "Good Source of Fiber," and "Nutrient Dense" because she does not allege that they are in any way untrue.

### 2. The Terms "Healthier" and "Nutrient Dense" Are Puffery

A company may not be sued for making unproveable or subjective claims. "Generalized, vague, and unspecified assertions constitute 'mere puffery' …, and hence are not actionable. To be actionable, a statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc*., No. CV 06-7152-GW (FMOx) 2010 WL 11545683, at *3 (C.D. Cal. May 10, 2010), *aff'd* 469 Fed.Appx. 605 (9th Cir. 2012) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173

---

[3] *See, e.g.*, "How Much Fiber Is in Popcorn," SF Gate (Dec. 2, 2018) ("Popcorn is not only a low-cal snack, but it's also a good source of fiber."), *available at* https://healthyeating.sfgate.com/much-fiber-popcorn-6094.html; "Health Benefits of Popcorn," WebMD (Sept. 14, 2022) ("In addition to being high in fiber, popcorn also contains phenolic acids, a type of antioxidant. In addition, popcorn is a whole grain, an important food group that may reduce the risk of diabetes, heart disease, and hypertension in humans."), *available at* https://www.webmd.com/food-recipes/health-benefits-popcorn.

F.3d 725, 731 (9th Cir. 1999)) (internal citation omitted); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (in contrast to "misdescriptions of specific or absolute characteristics of a product," puffery consists of "product superiority claims that are vague or highly subjective"); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("a general, subjective claim about a product is non-actionable puffery") (quotation omitted).

The statements "Nutrient Dense" and "healthier" are puffery because they cannot be proven one way or another for at least two reasons. First, none of these statements have comparators, so there is nothing against which to objectively measure them. To assess if a food is healthier, one would need to know what it is being compared to, say a banana or a cheeseburger. The label does not compare the healthiness of snack foods, fiber content, or nutrient density to anything, which makes these claims puffery as a matter of law. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.1990) ("[A]dvertising which merely states in general terms that one product is superior is not actionable") (quotation marks omitted); *Edmunson v. Procter & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (to be actionable "a claim must be sufficiently specific, either by reference to particular product characteristics or 'criteria for measuring a "better" shave,' such that the claim can be tested").

Plaintiff asserts that LesserEvil "claims that it is 'healthier' than competitors on its Product." (Compl. ¶ 4.) This statement is inaccurate.[4] The labels make no mention of any competitor. What the labels actually say (on the back, in a general description about the company) is that LesserEvil is "Making healthier, less processed, earth-friendly snacking accessible to everyone." (*Id.*)

Second, there is no objective way to measure such a claim, even where, unlike here, the comparators are known. Nutrient density has no scientific meaning or measuring stick; the label does not even explain which nutrients are at issue or how density is measured.[5] As for the term

---

[4] Pursuant to the Court's Standing Order at Dkt. 3-1, on April 6, 2023, LesserEvil met and conferred with Plaintiff, and requested Plaintiff correct this inaccurate factual assertion so that the Court would not rely upon it, and to fix the other pleading deficiencies discussed in this brief. (Declaration of David H. Kwasniewski ("Kwasniewski Decl."), Ex. 1.) Plaintiff declined to do so. (*Id.* ¶11.)

[5] Plaintiff does not claim that this statement is false either, as popcorn is considered nutrient-dense. *See, e.g.*, Von Nguyen, et al, "Popcorn Is More Satiating Than Potato Chips in Normal-Weight Adults," National Library of Medicine, Nutr. J. 11:71 (2012) ("The satiety attribute, combined with popcorn's other favorable

1   "healthier," there is no objective measurement for this either, given the infinite ways healthiness

2   might be assessed. For example, is an organic steak of grass-fed beef healthier than chips made

3   from GMO corn?

4   Even in terms of fats and carbs, there is no right answer. Is a slice of whole-wheat bread

5   healthier than a pat of butter? If you subscribe to a ketogenic diet, the answer is "no." *See*, *e.g.*,

6   "The Ultimate Keto Diet Food List (Plus, What to Avoid)," *Good Housekeeping* (Nov. 1, 2022)[6]

7   (recommending "Most fats and oils: Eggs, butter, coconut oil, olive oil, ghee, lard, avocado oil (and

8   avocados!), mayonnaise; High-fat dairy: Heavy cream, soft and hard cheeses, cream cheese, and

9   sour cream" and listing "Starches: Bread (all of it!)," under "What You Can't Eat"). The Pritikin

10  Institute says otherwise. *See*, *e.g.*, https://www.pritikin.com/your-health/health-benefits/healthy-

11  weight-loss/537-trim-your-belly-fat-hip-fat-a-butt-fat.html ("The experts agree. Moderate exercise

12  and an eating plan that is low in fat and high in fiber-rich carbohydrates is the key to trimming body

13  fat.") (citing Archives of Internal Medicine, 2004; 164: 210). Still others differ. *See, e.g.,* Qing

14  Yang, Xinyue Lang, Wei Li & Yan Liang, "The Effects of Low-Fat, High-Carbohydrate Diets vs.

15  Low-Carbohydrate, High-Fat Diets on Weight, Blood Pressure, Serum Liquids and Blood Glucose:

16  a Systematic Review and Meta-Analysis," *European Journal of Clinical Nutrition* (June 24, 2021),

17  *available at* https://pubmed.ncbi.nlm.nih.gov/34168293/ (concluding that both high- and low-fat

18  diets "are effective for weight control and reduction of cardiovascular risk factors" and "Between

19  the two groups, changes in lean mass, fat mass, systolic blood pressure, diastolic blood pressure,

20  triglycerides, and glucose were non-significant.").[7]

21  Statements like "good" and "healthier" are puffery because there is no objective criteria for

22  evaluating them. Without a comparator, objective standard or testing methodology, what is "good"

23  _____

24  characteristics of being a whole grain, high fiber, nutrient dense snack, support popcorn as beneficial snack choice in the context of healthy weight management."), available at

25  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3502142/.

[6] available at https://www.goodhousekeeping.com/health/diet-nutrition/a19660747/list-of-keto-diet-

26  foods/?utm_source=google&utm_medium=cpc&utm_campaign=arb_ga_ghk_md_dsa_prog_org_usx_a1966 0747&gclid=EAIaIQobChMI-uvlt8Gk_gIVOQGtBh3Vxw5gEAAYAiAAEgI_l_D_BwE.

27  [7] Many other factors may also come into play regarding the healthiness of a food. *See*, *e.g.*, Harvard Medical

28  School, "Ask the doctor: Why is peanut butter 'healthy' if it has saturated fat?" (July 30, 2019), available at https://www.health.harvard.edu/nutrition/ask-the-doctor-why-is-peanut-butter-healthy-if-it-has-saturated-fat.

is purely subjective. *See, e.g., Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL 1296571, at *3 (S.D. Cal. April 30, 2007) ("highest quality ingredients" was non-actionable puffery); *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8-9 (N.D. Ill. July 1, 1999) ("optimum nutrition" and "most wholesome nutritious safe foods" were mere puffery because "nutrition is such a nebulous concept"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) (affirming Rule 12(b)(6) dismissal of claim that "'CVB's credit metrics are superior' to those of its peers" because credit metrics is not sufficiently concrete).

Even cases where companies make vague claims of superiority over their competitors' products—which are far more concrete than simply saying something is a "good source"—are regularly dismissed as puffery. Before she was elevated to the Ninth Circuit, Judge Koh reiterated this principle in *Yetter v. Ford Motor Co.*, where she dismissed as puffery the claim that a truck had "superior gas mileage and performance to previous Ford models":

> [T]he salesperson represented that the '2008 F-350 is a better truck with better performance; guaranteed'" and that "the 2008 F-350 had superior gas mileage and performance to previous Ford models." *Id.* These statements are quintessential, non-actionable puffery.

No. 19-CV-00877-LHK, 2019 WL 7020348, at *18 (N.D. Cal. Dec. 20, 2019). These statements discuss product traits and make a comparison to other products. But they are "quintessential, non-actionable puffery," because the concepts of "superior gas mileage," and "better performing," are typical vague, positive claims companies make about their products. If anything, those statements are more concrete than "good source of fiber" or "healthier."

In *Oestreicher v. Alienware Corp.*, the Court dismissed as puffery the following claims about a computer: "faster, more powerful, and more innovative than competing machines," "higher performance," "longer battery life," "richer multimedia experience," "faster access to data" and "ensure optimum performance." 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). These statements involve measurable computer attributes, *e.g.*, processor speed, and at least one of them makes this claim vis-à-vis "competing machines." These statements, along with statements with no comparator such as "longer battery life" were all dismissed as puffery. The underlying reasoning—that such claims defy reasonable measurement—applies with equal or greater force to the terms at issue here,

such as "healthier," "nutrient dense," or "good source of fiber," which similarly have no comparators and cannot be objectively verified. Her decision was affirmed by the Ninth Circuit. *Oestreicher v. Alienware Corp.*, 322 Fed. App'x 489, 493 (9th Cir. 2009).

In *Finney v. Ford Motor Co.*, Judge Tigar held that the language "longest lasting diesel motor" and "the longest lasting diesel in its class" were puffery. No. 17-cv-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018). Again, defendant compared its products' durability against other engines. Yet the claims were dismissed because they are simply vague proclamations that the product is good that are difficult to quantify or otherwise assay.

More cases than can be cited in this brief have applied these principles in less compelling circumstances than exist here. *See, e.g., Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ("Optimum" on cereal package is puffery); *In re Boston Beer Co.*, 198 F.3d 1370, 1372 (Fed. Cir. 1999) ("The Best Beer in America" is puffery); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) ("statements about dependability and superiority," including comments such as "unequaled tradition of quality production" or "unrivaled performance" are "too vague to be actionable"); *Atari Corp. v. 3D0 Co.*, No. C 94-20298 RMW (EAI), 1994 WL 723601, at *2 (N.D. Cal. 1994) ("the most advanced home gaming system in the universe" was nonactionable puffery); *Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1234 n.3 (S.D.N.Y. 1990) (claim that ice cream maker was "better" than competition is puffery); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) ("the strictest safety standards possible" was puffery); *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 708 F. Supp. 2d 1209, 1241 (D.N.M. 2010) ("world's best" dental equipment and "best in the world" were puffery; "Whether one thing of another is the 'best' is a normative assessment that involves weighing potentially infinite and sometimes immeasurable factors."); *Inspired By Design, LLC v. Sammy's Sew Shop, LLC*, No. 16-CV-2290-DDC-KGG, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) (defendants' statements regarding the "high quality" of their pet beds were subjective and constituted mere puffery); *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12-cv-30093-MAP, 2016 WL 3064055 (D. Mass. May 31, 2016) ("the purest salt on earth" was mere puffery and not a

MPA ISO DEFENDANT LESSEREVIL LLC'S MOTION TO DISMISS

1  "technically verifiable" claim); *Cytyc Corp. v. Neuromedical Sys., Inc*., 12 F. Supp. 2d 296, 304-05

2  (S.D.N.Y. 1998) ("the ThinPrep system offers a 'superior method of slide preparation that produces

3  improved diagnostic quality, resulting in better patient outcome'" is puffery).

4        Plaintiff's claims thus fail for the separate and independent reason that they are predicated

5  on non-actionable puffery.

6               **3.**     **Plaintiff Does Not Allege What She Thought Any of the Statements at**

7                           **Issue Meant to Her**

8        Even if the statements Plaintiff relies on were not puffery, Plaintiff does not plausibly allege

9  how those statements could have possibly misled her. To establish a claim under the statutes at issue

10  (and to establish injury and causation, as required by Article III), a plaintiff must prove that she was

11  misled. This requires alleging what the plaintiff thought she was being promised, and how what she

12  received was something less. *See, e.g., Pelayo v. Nestle USA, Inc*., 989 F. Supp. 2d 973, 978 (C.D.

13  Cal. 2013) (plaintiff "cannot state a claim under the CLRA or UCL regarding Defendants' allegedly

14  false, misleading, and deceptive 'All Natural' labeling because she fails to offer an objective or

15  plausible definition of the phrase 'All Natural,' and the use of the term 'All Natural' is not

16  deceptive in context."). Similarly here, Plaintiff does not offer any plausible allegation as to what

17  she thought any of the above statements meant to her at the time of her purchases, or how what she

18  bought failed to adhere to her definition.

19          **C.**     **Plaintiff's Efforts to Aggregate a Bunch of Truthful Statements into a**
                    **Supposedly Misleading One Fail as a Matter of Law**

20        Because Plaintiff cannot identify any false statements on the product labels, she asserts that

21  the confluence of the puffery and truthful statements on the label somehow caused her to believe

22  that the snacks she bought were healthier than they actually were. (Compl. ¶ 18.) A plaintiff,

23  however, cannot transmute these non-actionable statements into a claim that she was supposedly

24  misled when all the ingredients and nutritional facts were truthfully disclosed to her. Under these

25  circumstances, a consumer may choose for herself what she thinks is healthy and suits her

26  nutritional needs. *See, e.g., Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788,

27  at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020); *Truxel v. General Mills*

28  *Sales, In*c., No. C 16-04957 JSW, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019); *Silver v. BA*

1   *Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020).

2   Courts have rejected such theories because they would create a rule that would leave businesses

3   exposed to sweeping claims with no legal standard.

4   In *Perfect Bar*, plaintiffs claimed that the label "led them to believe that the bars would be

5   'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the

6   alternative, less healthy from what they otherwise had believed." 2018 WL 7048788, at *1. In

7   dismissing these claims at the pleading stage, the Court reasoned that plaintiffs could simply look at

8   the ingredients to "decide for themselves how healthy or not the sugar content would be" and that

9   they could not have "reasonably overestimate[d] the health benefits of the bar merely because the

10  packaging elsewhere refers to it as a health bar." *Id*. Because "the honey/sugar content was properly

11  disclosed—that is the end of it—period." *Id*.

12  The same is true here. Like Perfect Bar, LesserEvil accurately discloses the saturated fat

13  content in the Nutrition Facts. Plaintiff was free to "decide for [herself] how healthy or not the

14  [saturated fat] content would be" and could not overestimate the healthiness of the snack. *Id*.

15  In *Truxel*, plaintiffs allegedly "read and decided to purchase the products in substantial part

16  based on General Mill's health and wellness labeling statements ... [making] the products seem like

17  healthy food choices," when in fact, they contained high levels of sugar, and that plaintiffs "would

18  not have purchased the products if they had known that they were not as healthy as represented."

19  2019 WL 3940956, at *1.[8] The Court dismissed these claims as a matter of law because "the actual

20  ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to

21  their own conclusions about whether or not the sugar content was healthy for them." *Id*. at *4. The

22  Court's reasoning applies with equal force here: the ingredients and nutrition content were truthfully

23  disclosed, and it was therefore up to Plaintiff "to come to [her] own conclusions about whether or

24  not the [fat content] was healthy." *Id*.

25  Many other decisions support this result. *See Yoshida v. Campbell Soup Co.*, No. 3:21-cv-

26  09458, 2022 WL 1819528, at *1 (N.D. Cal. May 27, 2022) ("No reasonable consumer would be

27  _____

28  [8] The Court had previously dismissed claims based on the language "nutritious, long-lasting energy," "great start" and "world of goodness" as puffery. *Id*. at *2.

1  misled by the challenged phrases because the actual sugar content is plainly stated on the

2  labels…Consequently, a reasonable consumer would have all the information he or she needed to

3  decide whether the juices are a net benefit or detriment to personal health"); *Ghiradelli*, 445 F.

4  Supp. 3d at 20 ("where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient

5  list"); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (it is implausible to be misled about

6  amount of product in lipstick tube when net weight was properly disclosed); *Silver v. BA Sports*

7  *Nutrition*, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020) (dismissing claims that sports

8  beverage could mislead consumers about healthiness because  sugar content was accurately stated in

9  Nutrition Facts); *Horti v. Nestle HealthCare Nutrition, Inc*., No. 21-cv-09812-PJH, 2022 WL

10  2441560, at *7 (N.D. Cal. July 5, 2022) (dismissing claims because "Plaintiffs do not contest that

11  the product labels misstate the contents, that they misrepresent the ingredients, sugar, or

12  carbohydrates.").

13        The reasoning behind these decisions also applies with equal force here. Allowing this type

14  of claim would subject companies to non-statutory labeling requirements that change based on what

15  any given lawyer claims to be healthy, when different people have different needs (e.g., low sodium

16  for heart patients vs. high sodium for athletes), and views about what is "healthy" differ and change.

17  Even where, as here, a company truthfully and lawfully labels its products, it would be subject to

18  expensive lawsuits, and the courts would be deluged with a never-ending stream of litigation.

19  **II.**  **LESSEREVIL HAS NOT BREACHED ANY TECHNICAL FDA LABELING RULE**

20        Under the "unlawful" prong of the UCL, Plaintiff asserts that LesserEvil failed to adhere to

21  technical FDA labeling regulations regarding nutrient content claims. (Compl ¶¶ 58-87.) This

22  argument is incorrect. As discussed above, most of the statements on LesserEvil's packaging are

23  puffery and do not "expressly or implicitly characterize[] the level of a nutrient" and thus are not

24  subject to FDA regulations. *Butts v. Cibo Vita, Inc.*, No. 2:22-cv-00644-DAD-KJN, 2023 WL

25  2588012, at *4 (E.D. Cal. Mar. 20, 2023) To the extent any statement on the label were more than

26  puffery, the FDA expressly permits nutrient content claims without any additional disclosures

27  where, as here, they appear on "the panel that bears the nutrition information." 21 C.F.R. §

28  101.13(h)(4)(ii).

### A. The Terms "Healthier," "Good Source of Fiber," and "Nutrient Dense" Are Not Nutrient Content Claims

The various puffery-type statements on LesserEvil's labels are not nutrient content claims because they do not "expressly or implicitly characterize[] the level of a nutrient," *Butts*, 2023 WL 2588012—indeed, as set forth above in Section I(B)(1), they do not characterize anything at all.

Plaintiff contends "healthier" is a specifically regulated term that may not appear on any product that contains more than 3 grams of saturated fat. (Compl. ¶ 72.) But the regulation cited, 21 C.F.R. § 101.65(d), only applies when the term "healthier" is used to "[s]uggest that a food because of its nutrient content may help consumers maintain healthy dietary practice" ***and*** is used "in connection with an explicit or implicit claim or statement *about a nutrient* (e.g., "healthy, contains 3 grams of fat")." § 101.65(d)(1)(i)-(ii). LesserEvil makes no such claim. Rather, its packaging states: "healthier, less processed, earth-friendly snacking accessible to everyone." (Compl. ¶ 25.) This romance language refers to no nutrients, dietary practices, or even popcorn. Merely using the word "healthier," alone, is not sufficient to trigger application of the regulation. *Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA (MDD) 2022 WL 2441303, *4 (S.D. Cal. July 5, 2022) (assuming "fit" was a synonym of healthy, claim for violation of § 101.65(d) failed because "Plaintiffs do not plead that the word alone makes any 'explicit or implicit claim or statement about a nutrient'").

### B. LesserEvil Complies with 21 C.F.R. § 101.13(h)

Plaintiff asserts that the other statements on LesserEvil's packaging— "40% Less Fat," "33% More Fiber," and "20% Fewer Calories"—are impermissible nutrient content claims because they are not accompanied by the phrase "See nutrition information for _ content." (Compl. ¶72.) It is true that 21 C.F.R. § 101.13(h)(1) requires such a disclosure when products exceed certain levels of fat, saturated fat, cholesterol, or sodium per serving. However, where the claim is on the same panel as the nutrition information, no disclosure is required. 21. C.F.R. § 101.13(h)(4)(ii) ("If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel ***except for the panel that bears the nutrition information where it may be omitted***." (emphasis added).) Thus, like anyone with common sense, the FDA also understands that consumers reading the back panel will not skip over the nutrition information.

### III.   PLAINTIFF'S CLAIMS ARE PREEMPTED

Plaintiff's claims fail for the separate and independent reason that her attempt to impose new requirements governing health claims are preempted by federal law. In 1990, Congress passed the Nutritional Labeling and Education Act (NLEA), which amended the Food Drug and Cosmetics Act (FDCA). *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) ("The NLEA amended the FDCA to establish uniform food labeling requirements" (internal quotation marks omitted). The NLEA contains an express preemption provision, which "preempts all state law claims that directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements." *Id.* (internal quotation marks omitted).

Because FDA regulations—which LesserEvil complies with—describe the universe of health and nutrient content claims, Plaintiff's proposed rule, which seeks to prohibit claims allowed by the FDA, is thus preempted. *See Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168, at *4 (N.D. Cal. Feb. 24, 2023). In *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020), the Ninth Circuit addressed this exact issue, where plaintiffs claimed that the label implied that the product was "healthy" when it contained "too much" sugar. The Court upheld the dismissal of the claims, explaining that: "The NLEA preempts all state law claims that 'directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements'" *id.* (*quoting Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018)), and holding that: "To the extent Appellants' claims advance the notion that Perfect Bar made an improper health claim due to added sugar levels in the bar, those claims are not viable." *Id.*

The FDA has established detailed labeling requirements for use of terms like "healthier" on a food package. "Health claim means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication … characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1).

Here, as in *Perfect Bar*, Plaintiff's claim that the phrases "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense" on LesserEvil's labels misled consumers about the health benefits of the popcorn is also an attempt to impose a new health claim rule. Moreover, as detailed above, LesserEvil complies with the FDA

regulations on nutrient content claims. Plaintiff nonetheless seeks to prevent LesserEvil from using the term "healthier" in any context, even when it is *not* "made in connection with an explicit or implicit claim or statement *about a nutrient* (e.g., "healthy, contains 3 grams of fat")." 21 C.F.R. § 101.65(d)(1)(i)-(ii). As such, Plaintiff's "state law claims brought under the CLRA, FAL, and UCL" are preempted, and the Court should dismiss those claims. *Butts v. Cibo Vita, Inc.*, No. 2:22-cv-00644-DAD-KJN, 2023 WL 2588012, at *6 (E.D. Cal. Mar. 20, 2023); *Perfect Bar*, 816 F. App'x at 143; *Ackerman v. Coca Cola, Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *3 (E.D.N.Y. 2010); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1122–23 (N.D. Cal. 2010) (Koh, J.) (rejecting attempt "to ascribe disqualifying status to trans fats where the [FDA] has at least so far declined to do so" and holding that claims were preempted).

## IV.     PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Plaintiff's claims are separately and independently barred by the First Amendment. Plaintiffs' proposed state-law regulation punishing LesserEvil's truthful speech violates the First Amendment. There is no governmental interest in preventing LesserEvil from making truthful statements on its labels or compelling it to disclose Plaintiff's lawyers' health theories. Nor is her regulation in any way tailored to achieving such interest; it is so nebulous that no business could comply with it, resulting in a substantial suppression of protected speech.

Plaintiff's nebulous regulation seeks to prohibit admittedly truthful speech. Such a regulation can only be upheld if: (1) the government's interest in regulating speech is substantial; (2) the restrictions directly advance the government's asserted interest; and (3) the restrictions are no more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*, 447 U.S. 557, 566 (1980); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578-79 (2011); *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 142 S.Ct. 1464 (2022).

Here, the government has no interest in prohibiting LesserEvil from making truthful statements about its products, let alone a substantial interest. This is especially true given that the speech is allowed under FDA regulations. Nor is Plaintiffs' proposed regulation tailored to achieve any interest beyond spinning out pointless litigation. Plaintiffs' regulation has no limits. It would allow anyone to sue LesserEvil on any theory of what a "healthy" snack should, or should not, have

1  based on any daisy-chain of inferences. Could LesserEvil truthfully state it contains fiber without

2  fear of suit for implying the product is "healthy?" Could LesserEvil truthfully explain how it is

3  made with coconut oil without someone inferring that coconut products are "healthy"? Could

4  LesserEvil's put an image of a person playing a sport on its label if someone could say this implied

5  "healthiness"?  Plaintiffs' amorphous rule would chill truthful speech and is the definition of

6  overbreadth. Because the First Amendment protects against such incursions, Plaintiff's claims

7  should be dismissed for this separate and independent reason.

8  **V.     PLAINTIFF'S ASSORTMENT OF OTHER CLAIMS FAILS**

9       Plaintiff asserts parasitic claims for "unjust enrichment" and the "Consumer Protection

10  Statutes" of other states, which fail for all the reasons above. *See Weiss v. Trader Joe's Co.*, No.

11  8:18-cv-01130-JLS-GJS 2018 WL 6340758, at *8 (C.D. Cal. Nov. 20, 2018) (where false

12  advertising claims concerning ionized water failed, tag-along unjust enrichment claim also failed);

13  *see also Ebner v. Fresh, Inc.,* 838 F.3d 958, 968 (9th Cir. 2016) (unjust enrichment claim mooted

14  where complaint failed to state a claim as to other causes of action).

15       Plaintiff's claims for supposed violations of other state laws also fail because Plaintiff has

16  not alleged that she has standing to assert various statutory claims under foreign state law. Plaintiff

17  does not even identify the laws of the other states under which she claims she has a right to bring

18  suit, much less explain how she, a resident of California, suffered an injury in another state. And an

19  abstract interest in enforcing the laws of other states cannot suffice to confer standing on Plaintiff.

20  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Under Article III, federal courts do not

21  adjudicate hypothetical or abstract disputes…Federal courts do not exercise general legal oversight

22  of the Legislative and Executive Branches, or of private entities. And federal courts do not issue

23  advisory opinions.").

24  **VI.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF**

25       To establish standing to seek injunctive relief, a plaintiff must demonstrate "a real and

26  immediate threat of repeated injury" and that "the claimed threat of injury must be likely to be

27  redressed by the prospective injunctive relief."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

28

1   985 (9th Cir. 2007). The "threat of injury must be actual and imminent, not conjectural or

2   hypothetical." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

3         Plaintiff cannot establish such a threat, and her request for an injunction should therefore be

4   dismissed for lack of standing. Plaintiff claims that she "would consider purchasing the Products in

5   the future" if they "are properly labeled." (Compl. ¶19.) Such a speculative intention to purchase the

6   snacks in the future does not mean Plaintiff is likely to suffer future harm. *In re Coca-Cola Prods.*

7   *Marketing & Sales Practices Litig.*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. 2021)

8   (Berzon, J.) (reversing district court's determination that plaintiffs had standing because

9   "declarations that they would 'consider' purchasing properly labeled Coke are insufficient to show

10   an actual or imminent threat of future harm"); *see also Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-

11   2048-MMA (MDD), 2022 WL 2441303, at *7 (S.D. Cal. July 5, 2022) ("[I]n order to demonstrate

12   standing to seek injunctive relief, Plaintiffs must plausibly allege that they will be deceived again").

13   Similarly, Plaintiff's abstract interest in "properly labeled" products "is insufficient to demonstrate

14   [she has] suffered any particularized adverse effects." *In re Coca-Cola*, 2021 WL 3878654 at *2. To

15   the extent Plaintiff is actually concerned about the level of saturated fat in her foods, she can simply

16   read the label to determine whether the product meets her personal definition of healthiness. *See*

17   *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6354 PSG (JCx) 2018 WL 6714323, at *4 (C.D.

18   Cal. Oct. 17, 2018) ("now that Plaintiff is on notice about potential underfilling, he could easily

19   determine the number of pretzels in each package before making a future purchase by simply

20   reading the back panel, which lists the number of servings in each bag and the number of pretzels in

21   each serving").

22         **<u>CONCLUSION</u>**

23         For the foregoing reasons, the Complaint should be dismissed with prejudice.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1 | Dated:  April 28, 2023

2 | Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

3 | By: _____

4

5 | Matthew Borden, Esq.
David H. Kwasniewski, Esq.
Tracy O. Zinsou, Esq.

6 | BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor

7 | San Francisco, Ca 94014
Tel.: (415) 599-0210

8 | Facsimile: (415) 276-1808

9 | borden@braunhagey.com
kwasniewski@braunhagey.com

10 | zinsou@braunhagey.com

11 | *Attorneys for Defendant LesserEvil LLC*