Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
David H. Kwasniewski, Esq. (SBN: 281985)
  kwasniewski@braunhagey.com
Tracy O. Zinsou, Esq. (SBN: 295458)
  zinsou@braunhagey.com
BRAUNHAGEY & BORDEN LLP
351 California Street, 10th Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR DEFENDANT
LESSEREVIL LLC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| TWYLA COGSWELL, individually, and on behalf of those similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>LESSEREVIL LLC,<br><br>     Defendant. | **Case No. 1:23-CV-00311-ADA-BAM**<br><br>**DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         July 31, 2023<br>Time:        1:30pm<br>Judge:      Hon. Ana de Alba<br>Courtroom:  1<br><br>Complaint Filed:  March 1, 2023<br>FAC Filed:       May 19, 2023 |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2023 in Courtroom 1 of the above-entitled Court, Defendant LesserEvil LLC ("LesserEvil") will and hereby does move for an order dismissing the claims asserted by Plaintiff Twyla Cogswell.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support of the Motion, the Declaration of David H. Kwasniewski, and the files and records in this action and any further evidence and argument that the Court may consider.

Dated: June 16, 2023

Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By: _____
         Matthew Borden

*Attorneys for Defendant LesserEvil LLC*

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 3

    A.    The Parties ........................................................................................ 3

    B.    Plaintiff's Claims .............................................................................. 3

ARGUMENT.................................................................................................................. 5

I.    PLAINTIFF'S CLAIMS ARE IMPLAUSIBLE ................................................. 5

    A.    It Is Not Plausible That Plaintiff Selectively Read the Label So as to Miss the
Portion Most Significant to Her: The Nutrition Facts .............................. 5

    B.    Plaintiff Does Not Allege That Any Statement on the Label Is False.................. 7

        1.    Plaintiff Does Not Allege That Any Factual Statement Is Untrue ............. 8

        2.    The Terms "Healthier" and "Nutrient Dense" Are Puffery........................ 8

        3.    Plaintiff Does Not Allege What She Thought Any of the Statements at Issue
Meant to Her ............................................................................. 13

    C.    Plaintiff's Efforts to Aggregate a Bunch of Truthful Statements into a Supposedly
Misleading One Fail as a Matter of Law .............................................. 13

II.    LESSEREVIL HAS NOT BREACHED ANY TECHNICAL FDA
LABELING RULE ....................................................................................... 15

III.    PLAINTIFF'S CLAIMS ARE PREEMPTED ..................................................... 16

IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT ................. 18

V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS............................................. 19

VI.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF.......................... 19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ackerman v. Coca Cola, Co*.,
  2010 WL 2925955 (E.D.N.Y. 2010) ........................................................... 18

*Apodaca v. Whirlpool Corp*.,
  No. SACV 13-00725 JVS (ANx), 2013 WL 6477821*6 (C.D. Cal. Nov. 8, 2013) .................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................. 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)............................................................................. 5

*Atari Corp. v. 3D0 Co.*,
  1994 WL 723601 (N.D. Cal. 1994) ............................................................. 12

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ................................................................. 19

*Bobo v. Optimum Nutrition, Inc.*,
  No. 14CV2408, 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ................................. 6

*Butts v. Cibo Vita, Inc.*,
  No. 2:22-cv-00644-DAD-KJN, 2023 WL 2588012 (E.D. Cal. Mar. 20, 2023).................... 16, 18

*Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New York*,
  447 U.S. 557 (1980)............................................................................ 18

*Chacanaca v. Quaker Oats Co*.,
  752 F. Supp. 2d. 1111 (N.D. Cal. 2010)....................................................... 18

*Cheslow v. Ghirardelli Chocolate Co.*,
  445 F. Supp. 3d 8 (N.D. Cal. 2020).......................................................... 6, 15

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
  142 S.Ct. 1464 (2022).......................................................................... 18

*Clark v. Perfect Bar, LLC*,
  816 F. App'x 141 (9th Cir. 2020).............................................................. 17

*Clark v. Perfect Bar, LLC*,
  2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)................................................... 2, 14

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*.,
  173 F.3d 725 (9th Cir. 1999) .................................................................. 8

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc*.,
  911 F.2d 242 (9th Cir.1990) ................................................................... 9

*Cordes v. Boulder Brands USA, Inc.*,
  No. CV 18-6354 PSG (JCx), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018)....................... 20

*Cytyc Corp. v. Neuromedical Sys., Inc*.,
  12 F. Supp. 2d 296 (S.D.N.Y. 1998) .......................................................... 13

*Davidson v. Kimberly–Clark Corp*.,
  889 F.3d 956 (9th Cir. 2018) .................................................................. 19

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .............................................................. 15, 19

*Edmunson v. Procter & Gamble Co*.,
  537 F. App'x 708 (9th Cir. 2013) .............................................................. 9

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

*Effinger v. Ancient Organics LLC*,
No. 22-cv-03596-RS, 2023 WL 2214168 (N.D. Cal. Feb. 24, 2023)............................................ 17

*Finney v. Ford Motor Co*.,
2018 WL 2552266 (N.D. Cal. June 4, 2018) ............................................................................... 12

*Fraker v. KFC Corp*.,
No. 06-CV-01284-JM (WMC), 2007 WL 1296571 (S.D. Cal. April 30, 2007) .......................... 11

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ........................................................................................................... 6

*Greater Houston Transp. Co. v. Uber Techs., Inc*.,
155 F. Supp. 3d 670 (S.D. Tex. 2015) ......................................................................................... 12

*Guidance Endodontics, LLC v. Dentsply Intern., Inc*.,
708 F. Supp. 2d 1209 (D.N.M. 2010) .......................................................................................... 12

*Hartmann v. Cal. Dept. of Corrections*,
707 F. 3d 1114 (9th Cir. 2013) ...................................................................................................... 5

*Hawkings v. Sacramento Cnty. Dep't of Child & Fam. Adult Servs*.,
No. 2:20-cv-0156 DAD DB PS, 2023 WL 316569 (E.D. Cal. Jan. 19, 2023) ............................. 5

*Hawkins v. Kroger Co*.,
906 F.3d 763 (9th Cir. 2018) ....................................................................................................... 17

*Horti v. Nestle HealthCare Nutrition, Inc*.,
No. 21-cv-09812-PJH, 2022 WL 2441560 (N.D. Cal. July 5, 2022) ........................................... 15

*In re 5-Hour Energy Mktg. and Sales Practices Litig*.,
No. ML-13-2438 PSG (PLAx), 2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ........................... 6

*In re Boston Beer Co.*,
198 F.3d 1370 (Fed. Cir. 1999) ................................................................................................... 12

*In re Coca-Cola Prods. Marketing & Sales Practices Litig.*,
No. 20-15742, 2021 WL 3878654 (9th Cir. 2021) ...................................................................... 19

*Inspired By Design, LLC v. Sammy's Sew Shop, LLC*,
No. 16-CV-2290-DDC-KGG, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) ................................ 13

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ..................................................................................................... 11

*Newcal Indus., Inc. v. Ikon Office Solution*,
513 F.3d 1038 (9th Cir. 2008) .................................................................................................. 1, 9

*Nikkal Indus., Ltd. v. Salton, Inc.*,
735 F. Supp. 1227 (S.D.N.Y. 1990) ............................................................................................ 12

*Oestreicher v. Alienware Corp.*,
322 Fed. App'x 489 (9th Cir. 2009) ............................................................................................ 12

*Oestreicher v. Alienware Corp.*,
544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................................................................ 12

*Pelayo v. Nestle USA, Inc*.,
989 F. Supp. 2d 973 (C.D. Cal. 2013) ........................................................................................ 13

*Shaker v. Nature's Path Foods, Inc*.,
No. EDCV 13-1138-GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ......................... 12

*Silver v. BA Sports Nutrition*,
No. 20-cv-00633-SI, 2020 WL 2992873 (N.D. Cal. June 4, 2020)................................... 2, 14, 15

*Sorrell v. IMS Health Inc*.,
564 U.S. 552 (2011)...................................................................................................................... 18

*Southland Sod Farms v. Stover Seed Co*.,
108 F.3d 1134 (9th Cir. 1997) ....................................................................................................... 9

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

*Sustainable Sourcing, LLC v. Brandstorm, Inc.*,
   No. 12-cv-30093-MAP, 2016 WL 3064055 (D. Mass. May 31, 2016) ....................................... 13
*Truxel v. General Mills Sales, In*c.,
   No. C 16-04957 JSW, 2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ............................... 2, 14, 15
*Tylka v. Gerber Prods. Co*., No. 96 C,
   No. 96 C 1647, 1999 WL 495126 (N.D. Ill. July 1, 1999) ........................................................... 11
*Vitiosus v. Alani Nutrition, LLC*,
   No. 21-cv-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July 5, 2022) ...................... 16, 19
*Vitt v. Apple Computer, Inc.*,
   No. CV 06-7152-GW (FMOx), 2010 WL 11545683 (C.D. Cal. May 10, 2010) ........................... 8
*Weiss v. Trader Joe's Co.*,
   No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758 (C.D. Cal. Nov. 20, 2018) ............................ 19
*Yetter v. Ford Motor Co*.,
   No. 19-CV-00877-LHK, 2019 WL 7020348 (N.D. Cal. Dec. 20, 2019) .................................... 11
*Yoshida v. Campbell Soup Co.*,
   No. 3:21-cv-09458, 2022 WL 1819528 (N.D. Cal. May 27, 2022) ............................................ 15

## STATUTES

Cal. Bus. & Prof. Code §§ 17200 ............................................................................................................ 4
Cal. Civ. Code §§ 1750 ........................................................................................................................... 4

## REGULATIONS

21 C.F.R. § 101.13(h) ........................................................................................................................... 16
21 C.F.R. § 101.14(a)(1) ....................................................................................................................... 17
21 C.F.R. § 101.65(d) .................................................................................................................. 2, 16, 17

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

1    Defendant LesserEvil LLC respectfully submits this Memorandum in support of its Motion

2  to Dismiss Plaintiff Twyla Cogswell's First Amended Complaint ("FAC").

3                                    **INTRODUCTION**

4    LesserEvil sells organic, sustainable, and delicious snacks. Plaintiff has sued LesserEvil for

5  false advertising without identifying any statement that is false. Plaintiff claims that she bought two

6  types of popcorn and one type of puffs because she read language on the back of the packages

7  including "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer

8  Calories," or "Nutrient Dense," and that these words made her believe that the snacks contained less

9  than 3 grams of saturated fat per serving. Her claims lack merit and should be dismissed without

10  leave to amend.

11    The saturated fat content is accurately stated in the Nutrition Facts, which can be found on

12  the same panel, right next to the language that Plaintiff claims caused her purchases. To the extent

13  that Plaintiff really cared about saturated fat content, it is not plausible that she studiously ignored

14  the best source of this information (the Nutrition Facts) to cobble together an unreasonable belief

15  based on a hodgepodge of language from adjacent places on the label.

16    Even if these phrases were Plaintiff's only referent for saturated fat content, they are not

17  false. The language "33% More Fiber," "20% Fewer Calories," and "40% Less Fat," accurately

18  compares the popcorn to "typical oil popped popcorn containing 10G fat, 3G fiber, and 150 calories

19  per serving." (FAC ¶ 5.) The other claims are non-actionable puffery because they have no

20  objective meaning. *See, e.g., Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052-53

21  (9th Cir. 2008) (ads that defendants "would deliver 'flexibility' in their 'cost-per-copy' contracts"

22  and "that they would lower copying costs for consumers" were puffery because they were not

23  quantifiable). Statements such as "healthier" cannot be tested because there is no comparator or

24  rubric. It is unclear how any of the statements at issue could plausibly cause Plaintiff to form a

25  belief about the saturated fat per serving. LesserEvil provided Plaintiff with truthful information

26  about the saturated fat content. She was free to use, or ignore, it as she saw fit.

27    Courts have begun to reject Plaintiff's theory that someone can be tricked about the

28  "healthiness" of a product when the label truthfully discloses the nutritional facts. In *Clark v.*

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

1  *Perfect Bar, LLC*, the Court dismissed plaintiffs' claims that they were misled into thinking that a

2  protein bar was "healthy," when it supposedly contained "added sugar."  2018 WL 7048788, at *1

3  (N.D. Cal. Dec. 21, 2018). The Court reasoned that plaintiffs could simply look at the ingredients to

4  "decide for themselves how healthy or not the sugar content would be" and that they could not have

5  "reasonably overestimate[d] the health benefits of the bar merely because the packaging elsewhere

6  refers to it as a health bar." *Id*. Because "the honey/sugar content was properly disclosed—that is

7  the end of it—period."  *Id.*

8         Similarly, in *Truxel v. General Mills Sales, In*c., the Court rejected plaintiffs' contention that

9  sugar in cereals rendered health and wellness claims misleading because "the actual ingredients

10 were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to their own

11 conclusions about whether or not the sugar content was healthy for them." No. C 16-04957 JSW,

12 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019). In *Silver v. BA Sports Nutrition*, No. 20-cv-

13 00633-SI, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020), the Court dismissed claims that a

14 sports beverage could mislead consumers about the sugar content, which was accurately stated in

15 the Nutrition Facts. These decisions, and many others, recognize that allowing such claims would

16 subject companies to protean labeling requirements that change based on plaintiffs' lawyers'

17 shifting contentions about what they consider healthy. The same analysis is dispositive here.

18        All the claims are separately barred by the First Amendment, which precludes using the U.S.

19 Courts to restrain truthful speech. Plaintiff cannot identify any government interest to support her

20 proposed content-based restriction on speech, which cannot survive strict scrutiny.

21        Plaintiff's other claims fail. LesserEvil did not commit a technical FDA labeling violation;

22 Plaintiff selectively reads portions of 21 C.F.R. § 101.65(d)(2)(i)(F) instead of the entire regulation.

23 Finally, Plaintiff's assortment of parasitic state-law theories fails for the reasons given above.

24        After refusing to amend her Complaint on the ground that it was sufficient, Plaintiff forced

25 LesserEvil to file a motion to dismiss. Thereafter, she nominally amended her pleading to remove

26 an FDA regulation claim and claims under unspecified state "consumer protection statutes." These

27 amendments do not cure the fundamental defects with her case. Because Plaintiff cannot amend to

28 state a claim, leave to amend should be denied.

## BACKGROUND

### A.    The Parties

Defendant LesserEvil was founded in 2005 by Charles Coristine, who left the world of finance to pursue a more holistic lifestyle of meditation and self-awareness. The company offers organic, clean, tasty and sustainable snacks that are a "better alternative to the big name snacks," while protecting the welfare of its employees. LesserEvil was recognized in 2020 as Whole Foods Market's National Award Recipient for Raising the Bar for Quality.[1]

Plaintiff Twyla Cogswell claims she purchased Himalayan Pink Salt Popcorn, Himalayan Gold Popcorn, and No Cheese Cheesiness Paleo Puffs because these products had the language "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense" on the label. (FAC ¶¶ 16-18.)

### B.    Plaintiff's Claims

The back panel of the label of one accused bag of popcorn (FAC ¶ 26) is shown below:



---

[1] https://www.fooddive.com/press-release/20200309-lesserevil-receives-top-honor-for-quality-at-whole-foods-market-2020-suppli/

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

The back panel of one accused bag of puffs (*id.*) is shown below:



Plaintiff claims that LesserEvil engaged in "false advertising," and purports to assert claims under the Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), Cal. Business & Professions Code §§ 17200 et seq., §§ 17500 et seq., the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., and "unjust enrichment." The FAC alleges that Plaintiff bought the accused popcorn because the words "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense" caused her to buy the popcorn. As seen in the FAC at paragraph 26 and the associated images, the language that supposedly caused Plaintiff to buy the popcorn (pointed out by the red arrows above) appears on the back of the package, next to the Nutrition Facts—which are called out in large, bold letters—and the word "nutrient dense" does not appear on the popcorn.

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

The term "nutrient dense" is on the Paleo Puffs Plaintiff claims to have purchased. (FAC ¶ 26.) However, the terms "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," which supposedly caused her to buy the popcorn, do not appear on this label.

## ARGUMENT

A complaint must be dismissed unless it has sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hartmann v. Cal. Dept. of Corrections*, 707 F. 3d 1114, 1122 (9th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court should not assume that plaintiff "'can prove facts which it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged.'" *Hawkings v. Sacramento Cnty. Dep't of Child & Fam. Adult Servs*., No. 2:20-cv-0156 DAD DB PS, 2023 WL 316569, at *2 (E.D. Cal. Jan. 19, 2023) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).

## I.   PLAINTIFF'S CLAIMS ARE IMPLAUSIBLE

Plaintiff's claims are implausible for at least three separate reasons. First, she asserts that she selectively read the label to conclude from language other than the most obvious source of the saturated fat content (the Nutrition Facts) that the snacks she was purchasing had less than 3 grams of saturated fat per package. This makes no sense, especially given that the language she claims to have relied upon has nothing to do with saturated fat. Second, the language Plaintiff claims to have relied upon was paradigmatic puffery—complimentary statements about the product that cannot be proven true or false. Third, Plaintiff's attempt to aggregate truthful statements into a supposedly misleading one fails as a matter of law.

### A.   It Is Not Plausible That Plaintiff Selectively Read the Label So as to Miss the Portion Most Significant to Her: The Nutrition Facts

LesserEvil labels properly and accurately disclose all FDA required information about fat content in the location where LesserEvil is legally obligated to provide it, and consumers expect to find it, the Nutrition Facts panel. If Plaintiff cared about saturated fat to the point that it drove her snack-purchasing decisions, it is implausible that she would read the romance language right next to the Nutrition Facts and look at icons appearing right above the Nutrition Facts to figure out how

1    much saturated fat was in the product, while studiously ignoring the most obvious source of this

2    information—the Nutrition Facts.

3         Courts have dismissed claims in similar situations. *See*, *e.g.*, *In re 5-Hour Energy Mktg. and*

4    *Sales Practices Litig.*, No. ML-13-2438 PSG (PLAx), 2018 WL 11354864, at *5 (C.D. Cal. Jan. 24,

5    2018) ("the Court agrees with Defendants' observation that '[a]ny consumer who is interested in the

6    number of calories in a bottle of 5-hour ENERGY® knows immediately that' it contains four

7    calories, and 'therefore cannot be misled by solely focusing on one part of the product package they

8    assert is misleading'") (alterations in original); *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408

9    BEN (KSC), 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) ("While a reasonable consumer

10   may not inspect the finest of print to clarify a misleading statement, a reasonable consumer ...

11   cannot look at only one statement to the exclusion of everything else and claim he has been

12   misled."); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (plaintiff cannot claim to

13   "review the large print and ignore the qualifying language in small print" when the "qualifying

14   language appears immediately next to the representations it qualifies"); *Cheslow v. Ghirardelli*

15   *Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020) ("Plaintiffs and the general consuming

16   public are not free to ignore the ingredient list that does not include the words chocolate or cocoa.

17   Accordingly, it is not plausible that [plaintiffs were] deceived by the product's packaging.").

18        For example, in *Ghirardelli*, plaintiff alleged "Premium White Baking Chips" were

19   misleadingly labeled to imply that they were made of white chocolate because the packaging had a

20   photo of cookies, used the terms "chips" and "premium," and was sold in the baking aisle. The

21   Court held that, absent any actual false statement on the label, it was implausible that plaintiff read

22   the entire label except for the ingredient list, which did not include white chocolate or any of its

23   component ingredients. *Id*. Plaintiff's claim here is even more implausible because the Nutrition

24   Facts are the commonly known, and statutorily required, source of the information about saturated

25   fat content, and the place where people who care would look, rather than selectively reading other

26   parts of the labels, as Plaintiff claims to have done.

27        Plaintiff's claim is separately implausible because nothing in the language she allegedly read

28   and relied on discusses saturated fat at all. Why, for example, would reading "good source of fiber"

1  cause Plaintiff to form a belief about the saturated fat content? Nor does Plaintiff explain how many

2  grams per serving of saturated fat she supposedly thought the product had as a result of reading the

3  language in question, or why that would be so.

4         Nor can Plaintiff claim that she was somehow misled into believing that the product was

5  healthier than it was. To the extent that Plaintiff actually cared how much saturated fat was in her

6  snack foods, she was free to read the Nutrition Facts and decide whether the listed amount was what

7  she wanted. That is the whole purpose of the Nutrition Facts panel; it tells consumers about the

8  nutritional content, so that they can make their own informed choices. After providing the

9  information required by the FDA, LesserEvil is under no legal obligation to tell people about how

10 much saturated fat should be in a snack food, nor guess at whatever vague, protean standards

11 Plaintiff's lawyers may seek to impose on any given day.[2]

12        For each of these reasons alone, and especially together, Plaintiff's claims are implausible.

13     **B.      Plaintiff Does Not Allege That Any Statement on the Label Is False**

14        Plaintiff's claims are implausible for the separate and independent reason that Plaintiff does

15 not allege that any of the statements that supposedly caused her to buy the snacks is untrue. The

16 statements at issue fall into two categories. The first category, "40% Less Fat," "33% More Fiber,"

17 and "20% Fewer Calories," explains that this comparison is made to "typical oil popped popcorn

18 containing 10G fat, 3G fiber, and 150 calories per serving." (FAC ¶ 5.) Looking at the Nutrition

19 Facts (FAC ¶ 26) confirms that these statements are true, and Plaintiff nowhere alleges otherwise.

20 The second category, "healthier" and "Nutrient Dense" are not factual statements; they are classic

21 puffery—claims that are not actionable because they cannot be objectively verified. Further,

22 Plaintiff's claims separately fail because she does not explain what she thought the terms at issue

23 meant or how what she received supposedly fell short.

24

25

26

---

27 [2] This is especially true given that ideas about fat have changed over time. *See*, *e.g.*, "Ending the War on
   Fat," *Time Magazine* (June 12, 2014), available at https://time.com/2863227/ending-the-war-on-fat/; Nina

28 Teicholz, "America's Changing Attitudes on Fat Consumption" (Oct. 18, 2018), available at
   https://ninateicholz.com/fat-consumption-american-changing-attitudes/.

### 1.    Plaintiff Does Not Allege That Any Factual Statement Is Untrue

Plaintiff claims that the language "40% Less Fat," "33% More Fiber," and "20% Fewer Calories," caused her to buy the accused popcorn. (FAC ¶¶ 17-18.) Each of the icons bearing this information contains an asterisk, which explains that this comparison is made to "typical oil popped popcorn containing 10G fat, 3G fiber, and 150 calories per serving." (FAC ¶ 5.) Plaintiff does not allege that any of these statements is untrue. The truth of these statement is also apparent on the face of the pleadings, as seen in the Nutrition Facts. (FAC ¶ 26.) To the extent that Plaintiff claims that she did not read the information next to the asterisk, these statements would be puffery for the reasons given below—absent a comparator, none of these statements can be objectively verified. For similar reasons, the phrase "good source of fiber," to the extent that there is a scientific standard or definition, is also true.[3]

The FAC also does not allege that the terms "Good Source of Fiber," and "Nutrient Dense" are untrue. For the reasons discussed below, it would be impossible to claim that these statements— which regularly appear in literature about popcorn—are untrue because they are not really capable of objective measurement. Regardless, Plaintiff cannot base a false advertising case on the statements "40% Less Fat," "33% More Fiber," "20% Fewer Calories," "Good Source of Fiber," and "Nutrient Dense" because she does not allege that they are in any way untrue.

### 2.    The Terms "Healthier" and "Nutrient Dense" Are Puffery

A company may not be sued for making unproveable or subjective claims. "Generalized, vague, and unspecified assertions constitute 'mere puffery' …, and hence are not actionable. To be actionable, a statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc*., No. CV 06-7152-GW (FMOx), 2010 WL 11545683, at *3 (C.D. Cal. May 10, 2010), *aff'd* 469 F. App'x 605 (9th Cir. 2012) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725,

---

[3] *See, e.g.*, "How Much Fiber Is in Popcorn," SF Gate (Dec. 2, 2018) ("Popcorn is not only a low-cal snack, but it's also a good source of fiber."), *available at* https://healthyeating.sfgate.com/much-fiber-popcorn-6094.html; "Health Benefits of Popcorn," WebMD (Sept. 14, 2022) ("In addition to being high in fiber, popcorn also contains phenolic acids, a type of antioxidant. In addition, popcorn is a whole grain, an important food group that may reduce the risk of diabetes, heart disease, and hypertension in humans."), *available at* https://www.webmd.com/food-recipes/health-benefits-popcorn.

1  731 (9th Cir. 1999)) (internal citation omitted); *see also Southland Sod Farms v. Stover Seed Co*.,

2  108 F.3d 1134, 1145 (9th Cir. 1997) (in contrast to "misdescriptions of specific or absolute

3  characteristics of a product," puffery consists of "product superiority claims that are vague or highly

4  subjective"); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("a

5  general, subjective claim about a product is non-actionable puffery") (quotation omitted).

6      The statements "Nutrient Dense" and "healthier" are puffery because they cannot be proven

7  one way or another for at least two reasons. First, none of these statements have comparators, so

8  there is nothing against which to objectively measure them. To assess if a food is healthier, one

9  would need to know what it is being compared to, say a banana or a cheeseburger. The label does

10 not compare the healthiness of snack foods, fiber content, or nutrient density to anything, which

11 makes these claims puffery as a matter of law. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection

12 Serv., Inc*., 911 F.2d 242, 246 (9th Cir.1990) ("[A]dvertising which merely states in general terms

13 that one product is superior is not actionable") (quotation marks omitted); *Edmunson v. Procter &

14 Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (to be actionable "a claim must be sufficiently

15 specific, either by reference to particular product characteristics or 'criteria for measuring a "better"

16 shave,' such that the claim can be tested").

17     Plaintiff asserts that LesserEvil "claims that it is 'healthier' than competing products on its

18 Product." (FAC. ¶ 4.) This statement is still inaccurate.[4] What the labels actually say (on the back,

19 in a general description about the company) is that LesserEvil is "Making healthier, less processed,

20 earth-friendly snacking accessible to everyone," (*Id.*)

21     Second, there is no objective way to measure such a claim, even where, unlike here, the

22 comparators are known. Nutrient density has no scientific meaning or measuring stick; the label

23

24

25  _____

26  [4] Pursuant to the Court's Standing Order, on April 13, 2023, LesserEvil met and conferred with Plaintiff, and requested Plaintiff correct inaccurate factual assertions in its original Complaint so that the Court would not rely upon them, and to fix the other pleading deficiencies discussed in LesserEvil's motion to dismiss the

27 original Complaint. (Declaration of David H. Kwasniewski ISO MTD FAC ¶¶ 3-6.) Plaintiff refused to do so. (*Id.* at ¶ 11; *see also* Dkt. 11-2 at 2.) After forcing LesserEvil to file a motion to dismiss, Plaintiff

28 nominally amended the Complaint without correcting the factual misstatements or legal defects.

1   does not even explain which nutrients are at issue or how density is measured.[5] As for the term

2   "healthier," there is no objective measurement for this either, given the infinite ways healthiness

3   might be assessed. For example, is an organic steak of grass-fed beef healthier than chips made

4   from GMO corn?

5        Even in terms of fats and carbs, there is no right answer. Is a slice of whole-wheat bread

6   healthier than a pat of butter? If you subscribe to a ketogenic diet, the answer is "no." *See*, *e.g.*,

7   "The Ultimate Keto Diet Food List (Plus, What to Avoid)," *Good Housekeeping* (Nov. 1, 2022)[6]

8   (recommending "Most fats and oils: Eggs, butter, coconut oil, olive oil, ghee, lard, avocado oil (and

9   avocados!), mayonnaise; High-fat dairy: Heavy cream, soft and hard cheeses, cream cheese, and

10  sour cream" and listing "Starches: Bread (all of it!)," under "What You Can't Eat"). The Pritikin

11  Institute says otherwise. *See*, *e.g.*, https://www.pritikin.com/your-health/health-benefits/healthy-

12  weight-loss/537-trim-your-belly-fat-hip-fat-a-butt-fat.html ("The experts agree. Moderate exercise

13  and an eating plan that is low in fat and high in fiber-rich carbohydrates is the key to trimming body

14  fat.") (citing Archives of Internal Medicine, 2004; 164: 210). Still others differ. *See, e.g.,* Qing

15  Yang, Xinyue Lang, Wei Li & Yan Liang, "The Effects of Low-Fat, High-Carbohydrate Diets vs.

16  Low-Carbohydrate, High-Fat Diets on Weight, Blood Pressure, Serum Liquids and Blood Glucose:

17  a Systematic Review and Meta-Analysis," *European Journal of Clinical Nutrition* (June 24, 2021),

18  *available at* https://pubmed.ncbi.nlm.nih.gov/34168293/ (concluding that both high- and low-fat

19  diets "are effective for weight control and reduction of cardiovascular risk factors" and "Between

20

21

22

23

24  [5] Plaintiff does not claim that this statement is false either, as popcorn is considered nutrient-dense. *See*, *e.g.*,
Von Nguyen, et al, "Popcorn Is More Satiating Than Potato Chips in Normal-Weight Adults," National

25  Library of Medicine, Nutr. J. 11:71 (2012) ("The satiety attribute, combined with popcorn's other favorable
characteristics of being a whole grain, high fiber, nutrient dense snack, support popcorn as beneficial snack

26  choice in the context of healthy weight management."), available at
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3502142/.

27  [6] Available at https://www.goodhousekeeping.com/health/diet-nutrition/a19660747/list-of-keto-diet-
foods/?utm_source=google&utm_medium=cpc&utm_campaign=arb_ga_ghk_md_dsa_prog_org_usx_a1966

28  0747&gclid=EAIaIQobChMI-uvlt8Gk_gIVOQGtBh3Vxw5gEAAYAiAAEgI_1_D_BwE.

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

1  the two groups, changes in lean mass, fat mass, systolic blood pressure, diastolic blood pressure,

2  triglycerides, and glucose were non-significant.").[7]

3    Statements like "good" and "healthier" are puffery because there is no objective criteria for

4  evaluating them. Without a comparator, objective standard or testing methodology, what is "good"

5  is purely subjective. *See, e.g., Fraker v. KFC Corp.*, No. 06-CV-01284-JM (WMC), 2007 WL

6  1296571, at *3 (S.D. Cal. April 30, 2007) ("highest quality ingredients" was non-actionable

7  puffery); *Tylka v. Gerber Prods. Co.*, No. 96 C 1647, 1999 WL 495126, at *8-9 (N.D. Ill. July 1,

8  1999) ("optimum nutrition" and "most wholesome nutritious safe foods" were mere puffery because

9  "[n]utrition is a nebulous concept"); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir.

10  2016) (affirming Rule 12(b)(6) dismissal of claim that "'CVB's credit metrics are superior' to those

11  of its peers" because credit metrics is not sufficiently concrete).

12    Even cases where companies make vague claims of superiority over their competitors'

13  products—which are far more concrete than simply saying something is a "good source"—are

14  regularly dismissed as puffery. Before she was elevated to the Ninth Circuit, Judge Koh reiterated

15  this principle in *Yetter v. Ford Motor Co.*, where she dismissed as puffery the claim that a truck had

16  "superior gas mileage and performance to previous Ford models":

> [T]he salesperson represented that the '2008 F-350 is a better truck
> with better performance; guaranteed'" and that "the 2008 F-350 had
> superior gas mileage and performance to previous Ford models." *Id.*
> These statements are quintessential, non-actionable puffery.

17

18

19  No. 19-CV-00877-LHK, 2019 WL 7020348, at *2 (N.D. Cal. Dec. 20, 2019). These statements

20  discuss product traits and make a comparison to other products. But they are "quintessential, non-

21  actionable puffery," because the concepts of "superior gas mileage," and "better performing," are

22  typical vague, positive claims companies make about their products. If anything, those statements

23  are more concrete than "good source of fiber" or "healthier."

24    In *Oestreicher v. Alienware Corp.*, the Court dismissed as puffery the following claims

25  about a computer: "faster, more powerful, and more innovative than competing machines," "higher

26

27

28

---

[7] Many other factors may also come into play regarding the healthiness of a food. *See, e.g.*, Harvard Medical School, "Ask the doctor: Why is peanut butter 'healthy' if it has saturated fat?" (July 30, 2019), available at https://www.health.harvard.edu/nutrition/ask-the-doctor-why-is-peanut-butter-healthy-if-it-has-saturated-fat.

Case No.  1:23-CV-00311-ADA-BAM

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

1   performance," "longer battery life," "richer multimedia experience," "faster access to data" and

2   "ensure optimum performance." 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008). These statements

3   involve measurable computer attributes, *e.g.*, processor speed, and at least one of them makes this

4   claim vis-à-vis "competing machines." These statements, along with statements with no comparator

5   such as "longer battery life" were all dismissed as puffery. The underlying reasoning—that such

6   claims defy reasonable measurement—applies with equal or greater force to the terms at issue here,

7   such as "healthier," "nutrient dense," or "good source of fiber," which similarly have no

8   comparators and cannot be objectively verified. Her decision was affirmed by the Ninth Circuit.

9   *Oestreicher v. Alienware Corp.*, 322 Fed. App'x 489, 493 (9th Cir. 2009).

10          In *Finney v. Ford Motor Co.*, Judge Tigar held that the language "longest lasting diesel

11   motor" and "the longest lasting diesel in its class" were puffery. No. 17-cv-06183-JST, 2018 WL

12   2552266, at *8 (N.D. Cal. June 4, 2018). Again, defendant compared its products' durability against

13   other engines. Yet the claims were dismissed because they are simply vague proclamations that the

14   product is good that are difficult to quantify or otherwise assay.

15          More cases than can be cited in this brief have applied these principles in less compelling

16   circumstances than exist here. *See*, *e.g.*, *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-

17   GW(OPx), 2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ("Optimum" on cereal package is puffery);

18   *In re Boston Beer Co.*, 198 F.3d 1370, 1372 (Fed. Cir. 1999) ("The Best Beer in America" is

19   puffery); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *6

20   (C.D. Cal. Nov. 8, 2013) ("statements about dependability and superiority," including comments

21   such as "unequaled tradition of quality production" or "unrivaled performance" are "too vague to be

22   actionable"); *Atari Corp. v. 3D0 Co.*, No. C 94-20298 RMW (EAI), 1994 WL 723601, at *2 (N.D.

23   Cal. 1994) ("the most advanced home gaming system in the universe" was nonactionable puffery);

24   *Nikkal Indus., Ltd. v. Salton, Inc.*, 735 F. Supp. 1227, 1234 n.3 (S.D.N.Y. 1990) (claim that ice

25   cream maker was "better" than competition is puffery); *Greater Houston Transp. Co. v. Uber

26   Techs., Inc.*, 155 F. Supp. 3d 670, 683 (S.D. Tex. 2015) ("the strictest safety standards possible"

27   was puffery); *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 708 F. Supp. 2d 1209, 1241

28   (D.N.M. 2010) ("world's best" dental equipment and "best in the world" were puffery; "Whether

1   one thing of another is the 'best' is a normative assessment that involves weighing potentially

2   infinite and sometimes immeasurable factors."); *Inspired By Design, LLC v. Sammy's Sew Shop,*

3   *LLC*, No. 16-CV-2290-DDC-KGG, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) (defendants'

4   statements regarding the "high quality" of their pet beds were subjective and constituted mere

5   puffery); *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12-cv-30093-MAP, 2016 WL

6   3064055 (D. Mass. May 31, 2016) ("the purest salt on earth" was mere puffery and not a

7   "technically verifiable" claim); *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 304-05

8   (S.D.N.Y. 1998) ("the ThinPrep system offers a 'superior method of slide preparation that produces

9   improved diagnostic quality, resulting in better patient outcome'" is puffery).

10      Plaintiff's claims thus fail for the separate and independent reason that they are predicated

11   on non-actionable puffery.

12          **3.   Plaintiff Does Not Allege What She Thought Any of the Statements at Issue Meant to Her**

13

14      Even if the statements Plaintiff relies on were not puffery, Plaintiff does not plausibly allege

15   how those statements could have possibly misled her. To establish a claim under the statutes at issue

16   (and to establish injury and causation, as required by Article III), a plaintiff must prove that she was

17   misled. This requires alleging what the plaintiff thought she was being promised, and how what she

18   received was something less. *See, e.g.*, *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D.

19   Cal. 2013) (plaintiff "cannot state a claim under the CLRA or UCL regarding Defendants' allegedly

20   false, misleading, and deceptive 'All Natural' labeling because she fails to offer an objective or

21   plausible definition of the phrase 'All Natural,' and the use of the term 'All Natural' is not

22   deceptive in context."). Similarly here, Plaintiff does not offer any plausible allegation as to what

23   she thought any of the above statements meant to her at the time of her purchases, or how what she

24   bought failed to adhere to her definition.

25          **C.   Plaintiff's Efforts to Aggregate a Bunch of Truthful Statements into a Supposedly Misleading One Fail as a Matter of Law**

26      Because Plaintiff cannot identify any false statements on the product labels, she asserts that

27   the confluence of the puffery and truthful statements on the label somehow caused her to believe

28   that the snacks she bought were healthier than they actually were. (FAC ¶ 19.) A plaintiff, however,

1  cannot transmute these non-actionable statements into a claim that she was supposedly misled when

2  all the ingredients and nutritional facts were truthfully disclosed to her. Under these circumstances,

3  a consumer may choose for herself what she thinks is healthy and suits her nutritional needs. *See*,

4  *e.g.*, *Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec.

5  21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020); *Truxel v. General Mills Sales, In*c., No. C 16-

6  04957 JSW, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019); *Silver v. BA Sports Nutrition,*

7  *LLC*, No. 20-cv-00633-SI, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020). Courts have rejected

8  such theories because they would create a rule that would leave businesses exposed to sweeping

9  claims with no legal standard.

10        In *Perfect Bar*, plaintiffs claimed that the label "led them to believe that the bars would be

11  'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the

12  alternative, less healthy from what they otherwise had believed." 2018 WL 7048788, at *1. In

13  dismissing these claims at the pleading stage, the Court reasoned that plaintiffs could simply look at

14  the ingredients to "decide for themselves how healthy or not the sugar content would be" and that

15  they could not have "reasonably overestimate[d] the health benefits of the bar merely because the

16  packaging elsewhere refers to it as a health bar." *Id*. Because "the honey/sugar content was properly

17  disclosed—that is the end of it—period." *Id*.

18        The same is true here. Like Perfect Bar, LesserEvil accurately discloses the saturated fat

19  content in the Nutrition Facts. Plaintiff was free to "decide for [herself] how healthy or not the

20  [saturated fat] content would be" and could not overestimate the healthiness of the snack. *Id.*

21        In *Truxel*, plaintiffs allegedly "read and decided to purchase the products in substantial part

22  based on General Mill's health and wellness labeling statements ... [making] the products seem like

23  healthy food choices," when in fact, they contained high levels of sugar, and that plaintiffs "would

24  not have purchased the products if they had known that they were not as healthy as represented."

25  2019 WL 3940956, at *1.[8] The Court dismissed these claims as a matter of law because "the actual

26  ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come to

27  

28  [8] The Court had previously dismissed claims based on the language "nutritious, long-lasting energy," "great start" and "world of goodness" as puffery. *Id*. at *2.

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

their own conclusions about whether or not the sugar content was healthy for them." *Id.* at *4. The Court's reasoning applies with equal force here: the ingredients and nutrition content were truthfully disclosed, and it was therefore up to Plaintiff "to come to [her] own conclusions about whether or not the [fat content] was healthy." *Id.*

Many other decisions support this result. *See Yoshida v. Campbell Soup Co.*, No. 3:21-cv-09458, 2022 WL 1819528, at *1 (N.D. Cal. May 27, 2022) ("No reasonable consumer would be misled by the challenged phrases because the actual sugar content is plainly stated on the labels…Consequently, a reasonable consumer would have all the information he or she needed to decide whether the juices are a net benefit or detriment to personal health"); *Ghirardelli*, 445 F. Supp. 3d at 20 ("where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list"); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (it is implausible to be misled about amount of product in lipstick tube when net weight was properly disclosed); *Silver v. BA Sports Nutrition*, No. 20-cv-00633-SI, 2020 WL 2992873, at *7 (N.D. Cal. June 4, 2020) (dismissing claims that sports beverage could mislead consumers about healthiness because  sugar content was accurately stated in Nutrition Facts); *Horti v. Nestle HealthCare Nutrition, Inc.*, No. 21-cv-09812-PJH, 2022 WL 2441560, at *7 (N.D. Cal. July 5, 2022) (dismissing claims because "Plaintiffs do not contest that the product labels misstate the contents, that they misrepresent the ingredients, sugar, or carbohydrates.").

The reasoning behind these decisions also applies with equal force here. Allowing this type of claim would subject companies to non-statutory labeling requirements that change based on what any given lawyer claims to be healthy, when different people have different needs (e.g., low sodium for heart patients vs. high sodium for athletes), and views about what is "healthy" differ and change. Even where, as here, a company truthfully and lawfully labels its products, it would be subject to expensive lawsuits, and the courts would be deluged with a never-ending stream of litigation.

## II.    LESSEREVIL HAS NOT BREACHED ANY TECHNICAL FDA LABELING RULE

Under the "unlawful" prong of the UCL, Plaintiff asserts that LesserEvil failed to adhere to technical FDA labeling regulations regarding nutrient content claims. (FAC ¶¶ 58-88.) This argument is incorrect. As discussed above, most of the statements on LesserEvil's packaging are

1   puffery and do not "expressly or implicitly characterize[] the level of a nutrient" and thus are not

2   subject to FDA regulations. *Butts v. Cibo Vita, Inc.*, No. 2:22-cv-00644-DAD-KJN, 2023 WL

3   2588012, at *4 (E.D. Cal. Mar. 20, 2023).

4        The various puffery-type statements on LesserEvil's labels are not nutrient content claims

5   because they do not "expressly or implicitly characterize[] the level of a nutrient," *Butts, 2023 WL*

6   *2588012*—indeed, as set forth above in Section I(B)(1), they do not characterize anything at all.

7        Plaintiff contends "healthier" is a specifically regulated term that may not appear on any

8   product that contains more than 3 grams of saturated fat. (FAC ¶ 72.) But the regulation cited, 21

9   C.F.R. § 101.65(d), only applies when the term "healthier" is used to "[s]uggest that a food because

10  of its nutrient content may help consumers maintain healthy dietary practice **_and_** is used "in

11  connection with an explicit or implicit claim or statement *about a nutrient* (e.g., "healthy, contains 3

12  grams of fat")." § 101.65(d)(1)(i)-(ii). LesserEvil makes no such claim. Rather, its packaging states:

13  "healthier, less processed, earth-friendly snacking accessible to everyone." (FAC ¶ 26.) This

14  romance language refers to no nutrients, dietary practices, or even popcorn. Merely using the word

15  "healthier," alone, is not sufficient to trigger application of the regulation. *Vitiosus v. Alani*

16  *Nutrition, LLC*, No. 21-cv-2048-MMA (MDD), 2022 WL 2441303, *4 (S.D. Cal. July 5, 2022)

17  (assuming "fit" was a synonym of healthy, claim for violation of § 101.65(d) failed because

18  "Plaintiffs do not plead that the word alone makes any 'explicit or implicit claim or statement about

19  a nutrient'"). To the extent any statement on the label were more than puffery, the FDA expressly

20  permits nutrient content claims without any additional disclosures where, as here, they appear on

21  "the panel that bears the nutrition information." 21 C.F.R. § 101.13(h)(4)(ii) ("If the nutrient content

22  claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the

23  claim on each panel *except for the panel that bears the nutrition information where it may be*

24  *omitted*." (emphasis added).)

25  **III.    PLAINTIFF'S CLAIMS ARE PREEMPTED**

26       Plaintiff's claims fail for the separate and independent reason that her attempt to impose new

27  requirements governing health claims are preempted by federal law. In 1990, Congress passed the

28  Nutritional Labeling and Education Act (NLEA), which amended the Food Drug and Cosmetics Act

1  (FDCA). *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) ("The NLEA amended

2  the FDCA to establish uniform food labeling requirements" (internal quotation marks omitted). The

3  NLEA contains an express preemption provision, which "preempts all state law claims that directly

4  or indirectly establish any requirement for the labeling of food that is not identical to the federal

5  requirements." *Id.* (internal quotation marks omitted).

6        Because FDA regulations—which LesserEvil complies with—describe the universe of

7  health and nutrient content claims, Plaintiff's proposed rule, which seeks to prohibit claims allowed

8  by the FDA, is thus preempted. *See Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023

9  WL 2214168, at *4 (N.D. Cal. Feb. 24, 2023). In *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143

10 (9th Cir. 2020), the Ninth Circuit addressed this exact issue, where plaintiffs claimed that the label

11 implied that the product was "healthy" when it contained "too much" sugar. The Court upheld the

12 dismissal of the claims, explaining that: "The NLEA preempts all state law claims that 'directly or

13 indirectly establish any requirement for the labeling of food that is not identical to the federal

14 requirements'" *Id*. (*quoting Hawkins v. Kroger Co*., 906 F.3d 763, 769 (9th Cir. 2018)), and holding

15 that: "To the extent Appellants' claims advance the notion that Perfect Bar made an improper health

16 claim due to added sugar levels in the bar, those claims are not viable." *Id*.

17       The FDA has established detailed labeling requirements for use of terms like "healthier" on

18 a food package. "Health claim means any claim made on the label or in labeling of a food, including

19 a dietary supplement, that expressly or by implication … characterizes the relationship of any

20 substance to a disease or health-related condition." 21 C.F.R. § 101.14(a)(1).

21       Here, as in *Perfect Bar*, Plaintiff's claim that the phrases "healthier," "Good Source of

22 Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense" on

23 LesserEvil's labels misled consumers about the health benefits of the popcorn is also an attempt to

24 impose a new health claim rule. Moreover, as detailed above, LesserEvil complies with the FDA

25 regulations on nutrient content claims. Plaintiff nonetheless seeks to prevent LesserEvil from using

26 the term "healthier" in any context, even when it is *not* "made in connection with an explicit or

27 implicit claim or statement *about a nutrient* (e.g., "healthy, contains 3 grams of fat")." 21 C.F.R. §

28 101.65(d)(1)(i)-(ii). As such, Plaintiff's "state law claims brought under the CLRA, FAL, and UCL"

1  are preempted, and the Court should dismiss those claims. *Butts v. Cibo Vita, Inc*., No. 2:22-cv-

2  00644-DAD-KJN, 2023 WL 2588012, at *6 (E.D. Cal. Mar. 20, 2023); *Perfect Bar*, 816 F. App'x

3  at 143; *Ackerman v. Coca Cola, Co*., No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *3

4  (E.D.N.Y. 2010); *see also Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d. 1111, 1122–23 (N.D.

5  Cal. 2010) (Koh, J.) (rejecting attempt "to ascribe disqualifying status to trans fats where the [FDA]

6  has at least so far declined to do so" and holding that claims were preempted).

7  **IV.   PLAINTIFF'S CLAIMS ARE BARRED BY THE FIRST AMENDMENT**

8          Plaintiff's claims are separately and independently barred by the First Amendment.

9  Plaintiffs' proposed state-law regulation punishing LesserEvil's truthful speech violates the First

10  Amendment. There is no governmental interest in preventing LesserEvil from making truthful

11  statements on its labels or compelling it to disclose Plaintiff's lawyers' health theories. Nor is her

12  regulation in any way tailored to achieving such interest; it is so nebulous that no business could

13  comply with it, resulting in a substantial suppression of protected speech.

14          Plaintiff's nebulous regulation seeks to prohibit admittedly truthful speech. Such a

15  regulation can only be upheld if: (1) the government's interest in regulating speech is substantial;

16  (2) the restrictions directly advance the government's asserted interest; and (3) the restrictions are

17  no more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Pub.*

18  *Service Comm'n of New York*, 447 U.S. 557, 566 (1980); *Sorrell v. IMS Health Inc*., 564 U.S. 552,

19  578-79 (2011); *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 142 S.Ct. 1464 (2022).

20          Here, the government has no interest in prohibiting LesserEvil from making truthful

21  statements about its products, let alone a substantial interest. This is especially true given that the

22  speech is allowed under FDA regulations. Nor is Plaintiffs' proposed regulation tailored to achieve

23  any interest beyond spinning out pointless litigation. Plaintiffs' regulation has no limits. It would

24  allow anyone to sue LesserEvil on any theory of what a "healthy" snack should, or should not, have

25  based on any daisy-chain of inferences. Could LesserEvil truthfully state it contains fiber without

26  fear of suit for implying the product is "healthy?" Could LesserEvil truthfully explain how it is

27  made with coconut oil without someone inferring that coconut products are "healthy"? Could

28  LesserEvil's put an image of a person playing a sport on its label if someone could say this implied

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT

1  "healthiness"?  Plaintiffs' amorphous rule would chill truthful speech and is the definition of

2  overbreadth. Because the First Amendment protects against such incursions, Plaintiff's claims

3  should be dismissed for this separate and independent reason.

4  **V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS**

5         Plaintiff's parasitic claim for "unjust enrichment" fails for all the reasons above. *See Weiss*

6  *v. Trader Joe's Co.*, No. 8:18-cv-01130-JLS-GJS, 2018 WL 6340758, at *8 (C.D. Cal. Nov. 20,

7  2018) (where false advertising claims concerning ionized water failed, tag-along unjust enrichment

8  claim also failed); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (unjust

9  enrichment claim mooted where complaint failed to state a claim as to other causes of action).

10  **VI.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF**

11         To establish standing to seek injunctive relief, a plaintiff must demonstrate "a real and

12  immediate threat of repeated injury" and that "the claimed threat of injury must be likely to be

13  redressed by the prospective injunctive relief."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

14  985 (9th Cir. 2007). The "threat of injury must be actual and imminent, not conjectural or

15  hypothetical." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

16         Plaintiff cannot establish such a threat, and her request for an injunction should therefore be

17  dismissed for lack of standing. Plaintiff claims that she "would consider purchasing the Products in

18  the future" if they "are properly labeled." (FAC ¶20.) Such a speculative intention to purchase the

19  snacks in the future does not mean Plaintiff is likely to suffer future harm. *In re Coca-Cola Prods.*

20  *Marketing & Sales Practices Litig.*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. 2021)

21  (Berzon, J.) (reversing district court's determination that plaintiffs had standing because

22  "declarations that they would 'consider' purchasing properly labeled Coke are insufficient to show

23  an actual or imminent threat of future harm"); *see also Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-

24  2048-MMA (MDD), 2022 WL 2441303, at *7 (S.D. Cal. July 5, 2022) ("[I]n order to demonstrate

25  standing to seek injunctive relief, Plaintiffs must plausibly allege that they will be deceived again").

26  Similarly, Plaintiff's abstract interest in "properly labeled" products "is insufficient to demonstrate

27  [she has] suffered any particularized adverse effects." *In re Coca-Cola*, 2021 WL 3878654 at *2. To

28  the extent Plaintiff is actually concerned about the level of saturated fat in her foods, she can simply

1  read the label to determine whether the product meets her personal definition of healthiness. *See*

2  *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6354 PSG (JCx), 2018 WL 6714323, at *4 (C.D.

3  Cal. Oct. 17, 2018) ("now that Plaintiff is on notice about potential underfilling, he could easily

4  determine the number of pretzels in each package before making a future purchase by simply

5  reading the back panel, which lists the number of servings in each bag and the number of pretzels in

6  each serving").

## <u>CONCLUSION</u>

8        For the foregoing reasons, the First Amended Complaint should be dismissed with

9  prejudice.

10

11  Dated:  June 16, 2023                    Respectfully submitted,

12                                      BRAUNHAGEY & BORDEN LLP

13                                      By: _____

14                                          Matthew Borden

15                                      *Attorneys for Defendant LesserEvil LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LESSEREVIL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT