**GOOD GUSTAFSON AUMAIS LLP**
J. Ryan Gustafson (Cal. Bar No. 220802)
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel: (310) 274-4663
jrg@ggallp.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWYLA COGSWELL, individually, and on behalf of those similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>LESSEREVIL LLC,<br><br>     Defendant. | CASE NO. 1:23-CV-00311-ADA-BAM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>The Honorable Ana de Alba |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT......................................................................................................... 2

        A.    Evil Pleads Itself Into a Corner That Destroys Its Motion. ................... 2

        B.    Plaintiff's Claims Are Plausible.............................................................. 3

              1.    The Reasonable Consumer Standard ............................................ 4

              2.    Evil's Labels Are Misleading to a Reasonable Consumer......... 8

              3.    Plaintiff's Claims Are Not Premised on Puffery. ...................... 9

        C.    Evil Breaches FDA Regulations. .......................................................... 12

        D.    Plaintiff's Claims Are Not Preempted................................................... 13

        E.    Plaintiff Has Standing To Pursue Injunctive Relief............................. 15

        F.    The First Amendment Does Not Protect Defendant's Misleading
              Representations. .................................................................................... 16

        G.    Plaintiff States A Claim For Unjust Enrichment.................................. 18

III.    CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**

*Astiana v. Hain Celestial Grp., Inc.,*
 783 F. 3d 753 (9th Cir. 2015)....................................................................................... 18

*Balser v. Hain Celestial Grp., Inc.,*
 640 F. App'x 694 (9th Cir. 2016)..................................................................................... 7

*Bates v. State Bar of Ariz.,*
 433 U.S. 350 (1977)........................................................................................................ 16

*Bell v. Publix,*
 982 F.3d 468 (7th Cir. 2020)............................................................................................ 5

*Brazil v. Dole Food Co., Inc.,*
 No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013).................... 10

*Brazil v. Dole Packaged Foods, LLC,*
 660 F. App'x 531 (9th Cir. 2016)..................................................................................... 7

*Brown v. Natures Path Foods, Inc.,*
 No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ...................... 16

*Bruton v. Gerber Prod. Co.,*
 No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014). ........................ 6

*Bruton v. Gerber Prods. Co.,*
 961 F. Supp. 2d 1062 (N.D. Cal. 2013) ........................................................................ 17

*Bruton v. Gerber Products Co.,*
 703 F. App'x 468 (9th Cir. 2017)................................................................................... 18

*Butts v. Cibo Vita, Inc.,*
 No. 222CV00644DADKJN, 2023 WL 2588012 (E.D. Cal. Mar. 20, 2023)............... 13

*Castrol Inc. v. Pennzoil Co.,*
 987 F.2d 939 (3d Cir. 1993)........................................................................................... 16

*Chacanaca v. Quaker Oats Co.,*
 752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................................... 3, 14

*Chapman v. Skype,*
 220 Cal. App. 4th 217 (2013).......................................................................................... 4

*Clark v. Perfect Bar, LLC,*
 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) .............................................................. 13

*Coe v. Gen. Mills, Inc.,*
 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016)............................................................... 11

*Danone, US, LLC v. Chobani, LLC,*
 362 F. Supp. 3d 109 (S.D.N.Y. 2019) ............................................................................. 5

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)................................................................................................ 15

*Edenfield v. Fane*,
    507 U.S. 761 (1993)........................................................................................................... 16

*Effinger v. Ancient Organics LLC*,
    No. 22-CV-03596-RS, 2023 WL 2214168 (N.D. Cal. Feb. 24, 2023)...........................3, 8, 14

*Escobar v. Just Born Inc.*,
    2017 WL 5125740 (C.D. Cal. June 12, 2017)..................................................................... 5

*Fagan v. Neutrogena Corp.*,
    2014 WL 92255 (C.D. Cal. Jan. 8, 2014) .......................................................................... 5

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*,
    No. 10-cv-04879- JCS, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014)................................ 17

*Florida Lime & Avocado Growers v. Paul*,
    373 U.S. 132 (1963)........................................................................................................... 13

*Forrett v. Gourmet Nut Inc.*,
    No. 22-CV-02045-BLF, 2023 WL 3749556 (N.D. Cal. June 1, 2023) ................................ 10

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................................................. 13

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ............................................................................. 11

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009).............................................................................................. 14

*In re Milo's Dog Treats Consol. Cases*,
    9 F. Supp. 3d 523 (W.D. Pa. 2014) ................................................................................... 11

*In re R. M. J.*,
    455 U.S. 191 (1982)........................................................................................................... 16

*Johnson-Jack v. Health-Ade LLC*,
    587 F. Supp. 3d 957 (N.D. Cal. 2022) ............................................................................3, 10

*Jones v. Nutiva, Inc.*,
    2016 WL 5210935 (N.D. Cal. Sept. 22, 2016).................................................................. 11

*Jones v. Nutiva, Inc.*,
    2017 WL 3617104 (N.D. Cal. Aug. 23, 2017).................................................................... 11

*Jones v. Nutiva, Inc.*,
    No. 16-CV-00711-HSG, 2017 WL 3617104 (N.D. Cal. Aug. 23, 2017).......................... 9

*Jou v. Kimberly-Clark Corp.*,
    2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .................................................................. 6

*Krommenhock v. Post Foods, LLC,*
    334 F.R.D. 552 (N.D. Cal. 2020................................................................................. 12

*Krommenhock v. Post Foods, LLC,*
    No. 16-CV-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018)................................. 6

*LeGrand v. Abbott Lab'ys,*
    No. 22-CV-05815-TSH, 2023 WL 1819159 (N.D. Cal. Feb. 8, 2023) .............................. 8, 12

*Locklin v. StriVectin Operating Co., Inc.,*
    No. 21-CV-07967-VC, 2022 WL 867248 (N.D. Cal. Mar. 23, 2022) ................................. 18

*Loop AI Labs Inc v. Gatti,*
    No. 15-CV-00798-HSG, 2015 WL 5158639 (N.D. Cal. Sept. 2, 2015)................................. 18

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996).............................................................................................. 13

*Moore, v. GlaxoSmithKline,*
    No. 20-CV-09077-JSW, 2021 WL 3524047 (N.D. Cal. Aug. 6, 2021) ............................... 15

*Newcal Indus., Inc. v. Ikon Office Solution,*
    513 F.3d 1038 (9th Cir. 2008)............................................................................... 10

*Paschoal v. Campbell Soup Co.,*
    No. 21-CV-07029-HSG, 2022 WL 4280645 (N.D. Cal. Sept. 15, 2022)............................. 10

*Patriotic Veterans, Inc. v. Indiana,*
    736 F.3d 1041 (7th Cir. 2013)............................................................................... 13

*Peacock v. Pabst Brewing Co., LLC,*
    491 F. Supp. 3d 713 (E.D. Cal. 2020) ..................................................................... 15

*Penikila v. Sergeant's Pet Care Prods., LLC,*
    442 F. Supp. 3d 1212 (N.D. Cal. 2020) ................................................................... 18

*Plumley v. Massachusetts,*
    155 U.S. 461 (1894)............................................................................................. 14

*Resort Car Rental Sys., Inc. v. FTC,*
    518 F.2d 962 (9th Cir. 1975).................................................................................. 5

*Salazar v. Honest Tea, Inc.,*
    No. 2:13-CV-02318-KJM-EF, 2015 WL 75223 (E.D. Cal. Jan. 6, 2015).............................. 10

*Shank v. Presidio Brands, Inc.,*
    No. 17-CV-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018)............................... 15

*Smith v. Keurig Green Mountain, Inc.,*
    393 F. Supp. 3d 837 (N.D. Cal. 2019) ..................................................................... 17

*Soo Line R.R. Co. v. Werner Enterprises,*
    825 F.3d 413 (8th Cir. 2016).................................................................................. 13

*Tabler v. Panera*,
   19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ....................................... 14

*Tran v. Sioux Honey Ass'n, Coop.*,
   No. 17-cv-110-JLS-JCGx, 2018 WL 10612686 (C.D. Cal. Aug. 20, 2018) ........................... 14

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
   2015 WL 3498761 (E.D. Pa. June 3, 2015) ............................................................................. 17

*United States v. El-O-Pathic Pharmacy*,
   192 F.2d 62 (9th Cir. 1951) ...................................................................................................... 4

*Vanlaningham v. Campbell Soup Co.*,
   492 F. Supp. 3d 803 (S.D. Ill. 2020) ...................................................................................... 14

*Virgin Enterpr. Ltd. v. Am. Longevity*,
   2001 WL 34142402 (S.D.N.Y. Mar. 1, 2001) ....................................................................... 17

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) .............................................................................................2, 5, 7

## I. INTRODUCTION

Defendant (or "Evil") exploits consumers' preference for healthier products by representing to consumers that its Product is healthy, healthful, better for them, conducive to a healthy lifestyle, and a healthier alternative to competing products. Reasonable consumers, including Plaintiff, interpret the entire label and the "healthier" representation to mean that the Product is healthier than competing products and conducive to a healthy lifestyle. Further, reasonable consumers do not expect a healthy product to contain dangerously high levels of saturated fat. Instead of the healthy food product that Evil represents, consumers receive a Product that contains saturated fats at dangerously high levels. Plaintiff's First Amended Complaint (the "Complaint") plausibly raises these claims.

In her opposition, Plaintiff discuss seven important areas which will guide the Court to deny Evil's Motion.

First, because Evil presents numerous, conflicting arguments for dismissal, Plaintiff outlines how Evil's arguments actually severely impair its Motion.

Second, because Evil attempts to improperly re-write the Complaint, Plaintiff presents her plausible claims and discusses how they are consistent with the reasonable consumer standard.

Third, because Evil claims that it does not violate FDA regulations, Plaintiff points to two specific regulations violated by Evil that are outlined in the Complaint.

Fourth, because Plaintiff's claims are consistent with FDA regulations, Plaintiff's claims are not barred by preemption.

Fifth, because Plaintiff adequately alleges future harm under *Davidson*, she is entitled to seek injunctive relief.

Sixth, because the First Amendment does not protect deceptive speech, it offers no shield to Evil's misconduct.

Seventh, because claims for unjust enrichment may be brought in California, Plaintiff may

seek recovery from Evil's deceptive conduct with her unjust enrichment claim.

This is a simple case, and "[t]he facts of this case…do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Defendant presents multiple arguments seeking dismissal, but ultimately a single question drives the outcome. Under the standard of review for this motion, the only way Evil's Motion can be granted is if the Court holds that no reasonable consumer could interpret the Product's label as meaning the Product is healthful, healthy, conducive to a healthy lifestyle, or a healthier alternative to competitors. If the Court believes a reasonable consumer **could** interpret these representations to mean that the Product is healthy or conducive to a healthy lifestyle:

- Plaintiff's UCL claims survive and the Motion is Denied;
- Plaintiff's FAL claims survive and the Motion is Denied;
- Plaintiff's CLRA claims survive and the Motion is Denied; and
- Plaintiff's unjust enrichment claim survives and the Motion is Denied.

## II. ARGUMENT.

### A. Evil Pleads Itself Into a Corner That Destroys Its Motion.

As a preliminary matter, Evil's plethora of arguments against the Complaint creates an unintended consequence for Evil's Motion. In many instances, Evil's arguments are conflicting and create severely limited windows where its arguments can coexist.

For example, Evil claims that "healthier" is puffery[1] yet in a different section Evil relies upon the FDA's "detailed labeling requirements for use of terms like 'healthier' on a food package"[2] to support its argument for preemption. Yet, in another section, Evil contends that

---

[1] MTD, p. 7 ("The second category, "healthier" and "Nutrient Dense" are not factual statements; they are classic puffery—claims that are not actionable because they cannot be objectively verified.").

[2] MTD, p. 17 ("The FDA has established detailed labeling requirements for use of terms like 'healthier' on a food package.").

"healthier" is not a nutrient content claim.[3] These shifting viewpoints destroy Evil's Motion because Evil fails to present a unified attack. Instead, Evil creates isolated intellectual fiefdoms where a "victory" in one section undermines and destroys the arguments raised in another section.[4] In other words, Evil robs from Section III to pay Section II. This Pyrrhic approach is ultimately fatal to Evil's Motion.

## B. Plaintiff's Claims Are Plausible.

In its Motion, Evil misstates numerous sections of the Complaint and attempts to improperly re-write the Complaint.[5] An *accurate* review of the Complaint solidifies that Plaintiff's claims are plausible and properly raised in the Complaint.

Plaintiff's claims are premised on Evil's "healthier" and inclusion of numerous other supporting nutrient content claims which lead reasonable consumers to believe that the Products are "healthy, healthful, better for her, and a healthier alternative to the competition."[6] FAC ¶¶ 17-19. Evil distorts her Complaint to focus on reliance concerning a specific amount of saturated fat –

---

[3] MTD, p. 16 ("Merely using the word 'healthier,' alone, is not sufficient to trigger application of the regulation.").

[4] For example, if "healthier" is a nutrient content claim, then preemption plays no role because the Products contain excess levels of saturated fat to make that claim. However, if 'healthier' is not a nutrient content claim, then there is no preemption issue because "if federal law is silent as to a specific type of label statement, a claim that the statement is misleading is typically not preempted." *Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023 WL 2214168, at *4 (N.D. Cal. Feb. 24, 2023); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010) ("If the statements are not nutrient claims, then the NLEA's express preemption provision would not in the ordinary circumstance come into play."); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 970 (N.D. Cal. 2022) (held that the plaintiffs' claims were "not preempted because the challenged term, 'Health-Ade,' does not constitute a 'health' or 'nutrient content' claim, which are the pertinent labeling claims governed by federal law.").

[5] For example, Evil states, "Plaintiff contends 'healthier' is a specifically regulated term that may not appear on any product that contains more than 3 grams of saturated fat. (FAC ¶ 72.)" MTD, 16. The referenced paragraph does not include that language, and the standard is actually 1 gram of saturated fat. *See* FAC ¶¶ 76-77. This misstatement is repeated throughout the Motion, and specifically on pages 1 and 5.

[6] Evil's "we don't say healthier than the competition, we just say healthier" argument is unpersuasive. At a minimum, "healthier" requires a point of comparison, especially when the other nutrient content claims reference comparisons to other product formulations (logically from competing products).

– 3 –

GOOD GUSTAFSON

whether the correct 1 gram or Evil's manifested 3 grams – but misses the mark. It isn't the reliance on a specific amount, rather it is the "healthier" representation despite containing dangerously high levels of saturated fat. In other words, the reasonable consumer is not relying on a specific amount of saturated fat; rather, they rely upon the representation that the Product is "healthier" for them. Despite articulating her interpretation of the Product's label,[7] Evil contends that she fails to allege what the label represented to her.[8]

### 1. The Reasonable Consumer Standard

Evil's representations on the Product are false and misleading which render the Products misbranded. *See* 21 U.S.C. §§ 343(a) (a food is "misbranded" if "its labeling is false or misleading in any particular."). Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any single representation in the labeling is misleading, then the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement. "Misleading" is judged in reference to consumers "who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Plaintiff's consumer fraud claims are analyzed under the "reasonable consumer" test. The reasonable consumer is "neither the most vigilant and suspicious of advertising nor the most unwary or unsophisticated, but instead is the ordinary consumer with the target population." *Chapman v. Skype*, 220 Cal. App. 4th 217, 226 (2013). This is an objective standard. A plaintiff asserting violations based on consumer fraud need "only to show that members of the public are likely to be deceived." *Chapman*, 220 Cal. App. 4th at 226. At the motion to dismiss stage, "the relevant inquiry is not what the consumer actually believes, but

---

[7] *See, e.g.*, FAC ¶¶ 17-19.
[8] MTD, p.13.

– 4 –

whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer could believe." *Escobar v. Just Born Inc.*, 2017 WL 5125740, at *10 n.5 (C.D. Cal. June 12, 2017); *see also Williams*, 552 F.3d at 940 (reversing the district court's dismissal of the plaintiff's complaint and finding that, "given the opportunity, [the plaintiffs] have stated a claim and could plausibly prove that a reasonable consumer would be deceived by the Snacks packaging"). "Many reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Bell v. Publix,* 982 F.3d 468, 476 (7th Cir. 2020). Reasonable consumers have limited time in making the decision to trust a food company and place the product in their cart. *See, e.g.*, *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures .... Nor does the law expect this of the reasonable consumer."); *Bell*, 982 F.3d at 476 ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product.").

Courts have also clarified that the reasonable consumer test must be evaluated from the vantage of a reasonable consumer, not the vantage of the defendant. *See Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."). Representations capable of being interpreted in a misleading way should be construed against the advertiser. *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975). Thus, whether reasonable consumers would adopt a defendant's interpretation or plaintiff's interpretation should not be resolved on the pleadings. *See Fagan*, 2014 WL 92255, at *2; *see also*

– 5 –

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) ("Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.); *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *10 (N.D. Cal. Jan. 15, 2014).

In its attempt to define a "reasonable consumer," Evil attempts to attack the Complaint by improperly[9] introducing *evidence* into its Motion to define the perceptions of a reasonable consumer. However, these questions cannot be resolved at this stage. *Krommenhock v. Post Foods, LLC*, No. 16-CV-04958-WHO, 2018 WL 1335867, at *4 (N.D. Cal. Mar. 15, 2018) ("Whether or not Post's cereals are healthy—and whether their health and wellness statements are false or misleading—are questions that *cannot* be resolved at motion to dismiss stage, but may be resolved under a more stringent and evidentiary-based review at summary judgment.") (emphasis in original). While Evil attempts to argue its case in a Motion to Dismiss, this is not the proper stage. Even if it was the proper stage to present these arguments, the arguments would still fail because Plaintiff provides a strong foundation to warn that the Product is not healthy because of the high levels of saturated in the Product. FAC ¶¶29-53. At a minimum, these arguments represent a dispute of fact, and Plaintiff's claims cannot be dismissed at this stage.

In this discussion, Evil attempts to distract the Court by asking numerous questions about a reasonable consumer's understanding by asking various questions[10] – questions that are not

---

[9] Evil introduces information from Time Magazine, Good Housekeeping, various blogs, and other sources. MTD, n.2, n.3, and n.5-7. However, this is not proper in a Motion to Dismiss, and would be more appropriate at summary judgment. *See* Fed. R. Civ. P. 12(d) . Further, Evil fails to attempt to introduce these items through proper means (a motion for judicial notice).

[10] *See, e.g.*, MTD, pp. 6-7 ("Why, for example, would reading 'good source of fiber' cause Plaintiff to form a belief about the saturated fat content?"). Even if the Court were to delve into these nuances, the FDA links fiber claims with fat claims. *See* 21 C.F.R. § 101.54 ("If a nutrient content claim is made with respect to the level of dietary fiber, that is, that the product is high in

– 6 –

Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint
*Cogswell v LESSEREVIL LLC*, No. 1:23-CV-00311-ADA-BAM

resolved at this stage. Instead of following these red herrings, the Court's focus should concern the realities of the everyday consumer. Consumers shopping in a grocery store aisle are faced with numerous products competing for each consumer's cart. *See, e.g.*, Karen Bradshaw Schulz, *Information Flooding*, 48 IND. L. REV. 755, 782 (2015) (when terms "like 'low-fat' and 'multi-grain' were written in big, bright letters on foods," consumers would "focus on the bright claim rather than…the dull, black-and-white nutrition label…"); Alan M. White, *Behavior and Contract*, 27 LAW & INEQUALITY 135, 158 (2009) ("Billions are spent every year on behavioral research by the marketing industry in order to understand consumer biases and heuristics. Armed with this information, marketers engage in various strategies to increase sales."). A company that violates these rules gains a significant competitive advantage in the marketplace. *See* FAC ¶128.

The Ninth Circuit has at least twice reversed dismissal on the pleadings where the court adopted a defendant's interpretation over a plaintiff's reasonable interpretation. *See Williams*, 552 F.3d at 938; *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016). In those decisions, the Ninth Circuit held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury," and that it is only "the rare situation" in which that issue can be resolved on the pleadings. *Balser*, 640 F. App'x at 696; *Williams*, 552 F.3d at 938- 39; *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard). Simply, the reasonable consumer's interpretation of Evil's labels is a question of fact that can only be resolved at this stage in extremely limited circumstances. The case *sub judice* is not one of these limited scenarios.

---

fiber, a good source of fiber, or that the food contains 'more' fiber, and the food is not 'low' in total fat as defined in § 101.62(b)(2) or, in the case of a meal product, as defined in § 101.13(l), or main dish product, as defined in § 101.13(m), is not 'low' in total fat as defined in § 101.62(b)(3), then the label shall disclose the level of total fat per labeled serving.").

## 2. Evil's Labels Are Misleading to a Reasonable Consumer.

Evil's representation that the Product is "healthier" is deceptive because it fails to meet the required thresholds to satisfy this representation. Evil's representations are further deceptive because "the challenged statements would mislead consumers into believing the Product is healthy for them (or healthier than competing products), but the risks attendant to the high levels of saturated fat render it unhealthy or dangerous." *Effinger,* 2023 WL 2214168 at *5. Viewing the "healthier" representation and the Product's packaging as a whole– encompassed by numerous nutrient content claims– represents to consumers that the Product is a healthy snack.

As outlined herein, the Product's label represents to consumers that the Product contains nutritional benefits and is healthier than competing products. This interpretation is not novel and rather it has been adopted from other federal courts in California. *See , e.g., Id.*; *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("It is plausible that a reasonable consumer could interpret statements such as '0g trans fat' and '100% less cholesterol than butter' to indicate that Defendant's [Product] is healthy, healthier than butter, or at least does not negatively impact one's cholesterol levels.") ("*Jones I*"). The presentation to consumers that the Product is healthier despite consisting of unhealthy saturated fats at dangerous levels is deceptive and misleading. This causes the Product to be misbranded because "its labeling is false or misleading in any particular." *See* 21 U.S.C. §§ 343(a). Here, the reference to the Product being "healthier" combined with numerous other health-focused nutrient content claims, at a minimum, leads a reasonable consumer to believe the Product is healthy, healthful, and conducive to a healthy lifestyle.

Evil contends that many of the statements on the label are truthful. Whether Evil is correct, is not dispositive. *See LeGrand v. Abbott Lab'ys*, No. 22-CV-05815-TSH, 2023 WL 1819159, at *10 (N.D. Cal. Feb. 8, 2023) ("[T]he fact that some of the challenged claims may be literally true does not conclusively prevent a reasonable consumer from being misled."). Rather, "California

GOOD GUSTAFSON

consumer protection laws prohibit not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (citing *Williams*, 552 F.3d at 938) (cleaned up). Here, the fact that some statements – for example, "good source of fiber" – may be true, does not dispel Evil's deception that its Product is "healthier."

The Product's entire label conveys to consumers that the Product is healthful, healthy, and is healthier than the competition. These statements "taken individually and in the context of the label as a whole misleadingly imply that Defendant's Products are healthy." *Jones I*, 2016 WL 5210935, at *7. Nutrient content claims "contribute to the impression that the product is healthy." *Jones v. Nutiva, Inc.,* No. 16-CV-00711-HSG, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("*Jones II*"). Each element plays a role in Defendant's deceptive dialogue with the consumer. *Jones I*, 2016 WL 5210935, at *7 ("The same is true of each statement Defendant purports to isolate and analyze on a stand-alone basis without considering the context of the label as a whole."). Here, Evil's representations convey to consumers that the Product is healthful, healthy, and is healthier than the competition. This is deceptive because the Product contains dangerously high levels of saturated fat in violation of federal regulations and the expectations of the reasonable consumer.

### 3. Plaintiff's Claims Are Not Premised on Puffery.

"Healthier" and "Nutrient Dense" are not puffery. Rather, they are nutrient content claims concerning the nutrient content and healthiness of the Product. Evil contends that these representations are puffery because they "cannot be objectively verified." MTD, 7. However, that is not the only factor in determining puffery in the context of food products.[11] *See Salazar v.*

---

[11] Notably, most of the cases cited in Evil's discussion of puffery concern non-food products like trucks, computers, pet beds, and dental equipment. The few food cases cited in support of its puffery argument are old with the newest one originating in 2013.

*Honest Tea, Inc.*, No. 2:13-CV-02318-KJM-EF, 2015 WL 75223, at *4-5 (E.D. Cal. Jan. 6, 2015) (finding "packed with [an antioxidant]" to be a nutrient content claim because "[t]he term 'packed with' characterizes the level of flavonoid antioxidants in the product."). Many courts have agreed that "words other than those identified in the regulations constituted nutrient content claims." *Forrett v. Gourmet Nut Inc.*, No. 22-CV-02045-BLF, 2023 WL 3749556, at *4 (N.D. Cal. June 1, 2023); *Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015) ("the Court finds that the statements that Bai5 Antioxidant Infusions beverages are 'Antioxidant Packed' or are an 'Antioxidant Packed Beverage'—which plausibly imply a particular level of antioxidants contained in the product—constitute nutrient content claims and are thus sufficient to survive Bai's motion to dismiss."); *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *3 (N.D. Cal. Sept. 23, 2013) (same). Courts have applied this same analysis for the term "nutrient-dense" and concluded that it is a nutrient content claim. *Paschoal v. Campbell Soup Co.*, No. 21-CV-07029-HSG, 2022 WL 4280645, at *6 (N.D. Cal. Sept. 15, 2022) ( nutrient-dense blend is an "implied nutrient content claims because they suggest that the product's nutrient content may be useful in maintaining healthy dietary practices."). In addition, "healthier" is a codified nutrient content claim. 21 C.F.R. § 101.65(d)(2).

If the Court desires to analyze these terms independently of the cases and regulations cited above, the independent analysis delivers the same result. Puffery requires a two-step analysis. "[T]he principal issue when evaluating claimed puffery is whether a consumer would rely on the challenged term. Whether a term is easily defined or measured is secondary and merely informs the reliance analysis." *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal. 2022). Defendant's incomplete analysis focuses solely on the secondary factor and fails to conduct any analysis of the reliance factor. "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008). Here, Defendant's nutrition-focused representations are intended to induce

– 10 –

consumer reliance. Defendant uses "nutrient-dense" to describe the levels of nutrients contained in the Product. The FDA has always considered nutrient content claims – like "healthier" and "nutrient-dense" – to be "a marketing activity." 56 Fed. Reg. 60372 (1991) (they are a "marketing activity rather than as a tool for educating or assisting consumers in planning a healthy diet."). Evil uses nutrient content claims as a marketing tool to induce consumer reliance. A review of the first and "principal" factor cements that "nutrient dense" and "healthier" are not puffery.

Shifting focus to the secondary factor fails to change this conclusion. While "nutrient dense" may not have an easy definition, its combination with a nutrient creates a nutrient content claim. Words like "nutritious," "wholesome," "best choice," and "good for you," while not easily defined, are not puffery and can be implied nutrient content claims in some circumstances. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1078 (N.D. Cal. 2017).*See also Jones v. Nutiva, Inc.*, 2017 WL 3617104, at *3 (N.D. Cal. Aug. 23, 2017) ("[C]haracterizing coconut oil as 'nourishing' and a 'superfood'—contribute to the impression that the product is healthy.").

Even if a statement could be deemed puffery in isolation, courts review the packaging and deceptive context as a whole. Each statement contributes to the deceptive context of the packaging as a whole. *In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (citing *Williams*, 552 F.3d at 939 n. 3.) ("even if Defendants' statements… that they are 'good for pets,' constitute puffery standing alone, those statements contribute 'to the deceptive context of the packaging as a whole.'"); *Jones v. Nutiva, Inc.*, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) ("better than butter" is actionable in context of the entire label.). For example, "nutritious has been held to be actionable because it contributed to the deceptive context of the product that was created by the more-specific allegations of falsity." *Hadley*, 273 F. Supp. 3d 1052, 1089 (cleaned up). While a phrase like "great start" might be viewed as puffery in isolation, it has been ruled actionable based on the deceptive context of the product as a whole. *Coe v. Gen. Mills, Inc.*, 2016 WL 4208287, at *6 (N.D. Cal. Aug. 10, 2016). Here, while "nutrient dense" could be seen as

**GOOD GUSTAFSON**

puffery in isolation, when it is combined with "healthier," it is no longer puffery. Viewing the Product's packaging as a whole in the proper context – encompassed by nutrition-focused statements – represents to consumers that the Product is a healthy snack. Plaintiff's claims are not premised on mere puffery.

### C. Evil Breaches FDA Regulations.

Evil breaches two FDA regulations. First, the Products are "false or misleading in any particular" because Evil misrepresents the Products as "healthier" and implies that it is conducive to a healthy lifestyle despite containing dangerously high levels of saturated fat which violates 21 U.S.C. § 343(a). Second, the Products are labeled "healthier" despite having 500% more saturated fat than the threshold amount. This violates 21 C.F.R. § 101.65. Evil attempts to distinguish Plaintiff's argument concerning this regulation, but that too fails. The "healthier" representation is adjacent by nutrient content claims like "nutrient dense," "good source of fiber," "40% less fat," "33% more fiber," and "20% fewer calories." These nutrient content claims are adjacent to the "healthier" representation and are present to support the representation. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 571 (N.D. Cal. 2020 ("[I]n determining whether an implied nutrient claim has been made, the court must consider the context of where the challenged claim is made; while the 'magic words' that might create an implied nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim, there must be connection given the words, their placement, and their context."). Additionally, "[c]ourts have previously found implied nutrient content claims even if the statements do not specify the nutrient is present in a certain amount." *LeGrand v. Abbott Lab'ys*, No. 22-CV-05815-TSH, 2023 WL 1819159, at *8 (N.D. Cal. Feb. 8, 2023). Evil breaches at least two FDA rules.

**D.    Plaintiff's Claims Are Not Preempted.**

Despite breaching at least two FDA rules, Evil argues that Plaintiff's claims are preempted by federal law. Evil is wrong. Preemption presents no prohibition to Plaintiff's claims. Rather than offend federal law, Plaintiff's claims are supported by federal law.[12]

"When analyzing the scope of a preemption statute, a court's analysis must 'start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). The states' power to protect its citizens from deception is a traditional state police power. In *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 146 (1963), the High Court recognized that "neither logic nor precedent" leads to a distinction between the state's ability to protect the health and safety of its citizens and the state's ability to "prevent the deception of consumers." Additionally, "[w]hen determining whether federal law preempts state-law causes of action, [courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Soo Line R.R. Co. v. Werner Enterprises*, 825 F.3d 413, 420 (8th Cir. 2016). In other words, there is a "presumption against preemption." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). For over a century, states have been allowed to protect their citizens from deceptive

---

[12] Notably, the majority of cases cited in support of its preemption argument concern levels of sugar rather than saturated fat. This distinction is important because unlike saturated fat, "sugar is not a 'disqualifying nutrient.'" *Butts v. Cibo Vita, Inc.*, No. 222CV00644DADKJN, 2023 WL 2588012, at *7 (E.D. Cal. Mar. 20, 2023); *see also Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) ("Plaintiffs' grievance is that the packaging led them to believe that the bars would be 'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed."). Moreover, the "weight of authority" has rejected *Clark* in its "home" district. *LeGrand v. Abbott Lab'ys*, No. 22-CV-05815-TSH, 2023 WL 1819159, at *10 (N.D. Cal. Feb. 8, 2023) ("This Court follows the weight of authority in the district [] allowing these claims to proceed and declines to hold that disclosure of sugar content on a label necessarily precludes a claim alleging advertising promoting a product as healthy is misleading because of the harmful amounts of added sugar in the product.").

practices in the food sector. *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control … it is the protection of the people against fraud and deception in the sale of food products."); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334–35 (3d Cir. 2009). Further, "[p]reemption doctrine should not be lightly applied, and the burden is on the party seeking preemption to present a showing of conflict strong enough to overcome the presumption that state and local regulations can coexist with federal regulation." *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 806 (S.D. Ill. 2020) (internal citation omitted). Evil does not make this showing and fails to meet its burden.

Unlike the numerous sugar-focused cases cited by Evil, Plaintiff's claims concern the dangerously high levels of saturated fat present in the Products. As described in the previous section, Plaintiff's claims describe two breaches of FDA regulations and are consistent with federal law. Simply, preemption requires a conflict, and here, there is no conflict. Nevertheless, if the Court were to adopt alternative interpretation that "healthier" is not a nutrient content claim, that would destroy Evil's preemption argument because "if federal law is silent as to a specific type of label statement, a claim that the statement is misleading is typically not preempted." *Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023 WL 2214168, at *4 (N.D. Cal. Feb. 24, 2023); *See also Tabler v. Panera*, 19-CV-01646-LHK, 2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) (finding that the NLEA's preemption provision "does not apply" to claims of false or misleading labeling); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal. 2010) ("If the statements are not nutrient claims, then the NLEA's express preemption provision would not in the ordinary circumstance come into play."); *Tran v. Sioux Honey Ass'n, Coop.*, No. 17-cv-110-JLS-JCGx, 2018 WL 10612686, at *3 (C.D. Cal. Aug. 20, 2018) (no pertinent regulation governing statements that product was "pure" or "100% pure," and thus no preemption). Simply, if Plaintiff's claims are bound by federal law, she pleads consistent with those regulations because the Products contain dangerously high levels of saturated fat that are

– 14 –

above the threshold amount to make "healthy" claims, and if the Court believes that her claims concern nutrient content claims, then there is no conflict with federal law. Either way, preemption presents no barrier to Plaintiff's claims.

### E. Plaintiff Has Standing To Pursue Injunctive Relief

Even if reviewed by the Court, Plaintiff plausibly alleges actual and imminent future injury consistent with *Davidson*.

Plaintiff states "If she could be assured through prospective injunctive relief that the Products are properly labeled, she would consider purchasing the Products in the future." FAC ¶20.

This establishes sufficient standing for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."); *Peacock v. Pabst Brewing Co., LLC*, 491 F. Supp. 3d 713, 723 (E.D. Cal. 2020) ("'wishes and is likely' to continue purchasing Defendant's product if 'he could rely with confidence on [Defendant's] marketing and advertising…'" was sufficient to confer standing).

In reviewing Defendant's argument, "[s]everal courts have rejected similar arguments…" and found that consumers similar to Plaintiff had standing under *Davidson. Moore, v. GlaxoSmithKline*, No. 20-CV-09077-JSW, 2021 WL 3524047, at *5 (N.D. Cal. Aug. 6, 2021) (consumer had standing for injunctive relief "even if Plaintiff is now aware of some synthetic ingredients, it is plausible that she would still be unable to rely on the Products' labeling in the future...."); *Shank v. Presidio Brands*, No. 17-CV-00232-DMR, 2018 WL 1948830, at *3 (N.D. Cal. Apr. 25, 2018) (rejecting similar argument where plaintiff "would like to buy [Defendant's]

– 15 –

Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint
*Cogswell v LESSEREVIL LLC*, No. 1:23-CV-00311-ADA-BAM

accused products in the future if they were reformulated to contain all-natural ingredients….").

"'[R]eformulated' may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, [Plaintiff's] allegation satisfies *Davidson*'s first example of future harm. Because I can fairly interpret the complaint as alleging that [Plaintiff] would purchase the products again in the future if they were not misleadingly labeled, [Plaintiff] has sufficiently alleged standing to seek injunctive relief." *Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454 at *11 (N.D. Cal. May 10, 2022); *see also Brown v. Natures Path Foods*, No. 21-CV-05132-HSG, 2022 WL 717816, at *6 (N.D. Cal. Mar. 10, 2022) (finding standing for injunctive relief with similar allegations). Here, Plaintiff has standing to bring injunctive relief consistent with the requirements of *Davidson*.

## F. The First Amendment Does Not Protect Defendant's Misleading Representations.

Evil concedes that the labeling and advertising at issue is commercial speech, but argues that Plaintiff's claims somehow "punish[] LesserEvil's truthful speech" and thus violates the First Amendment. MTD at 18. Evil is wrong.

Plaintiff has plausibly alleged Evil's label representations are deceptive and misleading. Accordingly, Evil's First Amendment argument is legally untenable as "it is well settled that false commercial speech is not protected by the First Amendment and may be banned entirely." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350 383 (1977); *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[O]ur cases make clear that the State may ban commercial expression that is fraudulent or deceptive without further justification[.]") (citations omitted); *In re R. M. J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely."). Here, Plaintiff adequately alleges that Evil's marketing representations are misleading. The First Amendment does not protect deceptive and misleading commercial speech.

Indeed, Evil does not cite a single decision holding that First Amendment protections mandate dismissal of consumer protection claims concerning allegedly deceptive and misleading marketing of food products under Rule 12(b)(6). Courts instead have consistently rejected this defense. *See, e.g., Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1092-93 (N.D. Cal. 2013) (explaining that "[t]o the extent that Defendants attempt to dispute the merits of Bruton's allegations"—i.e., that Defendants' baby food labels were misleading—"by virtue of invoking a First Amendment defense, the Court finds such arguments inappropriate for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)"); *U.S. ex rel. Cestra v. Cephalon, Inc.*, 2015 WL 3498761, at *12 (E.D. Pa. June 3, 2015) (holding "the question of First Amendment protection is not properly disposed of on a motion to dismiss"); *Virgin Enterpr. Ltd. v. Am. Longevity*, 2001 WL 34142402, at *8 (S.D.N.Y. Mar. 1, 2001) ("[b]ecause it is well settled that false commercial speech is not protected by the First Amendment and may be banned entirely … the plaintiff's allegations in their complaint [] that the utterances in question are false and commercial in nature are sufficient to survive a Rule 12(b)(6) motion") (citations omitted).

*Central Hudson*, 447 U.S. 557 cited by Evil is not applicable here. Similarly, Evil's marketing does not meet the threshold prong of *Central Hudson* in that the statements at issue do not merit any First Amendment protection as "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity." *Id.* at 563; *See Fed. Trade Comm'n v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 WL 644749, at *10 (N.D. Cal. Feb. 19, 2014) (concluding *Central Hudson* inapplicable to causes of action based on a defendant's allegedly misleading advertising); *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 849 (N.D. Cal. 2019) (rejecting the defendant's similar First Amendment arguments). Moreover, none of Evil's suggested authority stands for the proposition that a manufacturer or seller of any product has a First Amendment right to make

– 17 –

claims that are false or deceptive. In short, Evil's misconduct is not shielded by the First Amendment on a motion to dismiss.

### G.    Plaintiff States A Claim For Unjust Enrichment

Defendant challenges Plaintiff's unjust enrichment claim with the often repeated, but almost invariably rejected, argument that there is not a "separate cause of action for unjust enrichment" in California. MTD at 18. But "standalone" unjust enrichment claims are permitted in California under certain circumstances. *See Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (denying motion to dismiss plaintiff's claim for unjust enrichment when presented with the same argument); *see also Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (independent claims for unjust enrichment can proceed). Even where courts have found no standalone claim, they still "construe the cause of action as a quasi-contract claim seeking restitution." *Locklin v. StriVectin Operating Co., Inc.*, No. 21-CV-07967-VC, 2022 WL 867248, at *3 (N.D. Cal. Mar. 23, 2022); *Astiana v. Hain Celestial Grp., Inc.*, 783 F. 3d 753, 762 (9th Cir. 2015) (stating that courts can construct "unjust enrichment" claims as a quasi-contract claim seeking restitution). And finally, a plaintiff is "permitted to plead an unjust enrichment claim in the alternative." *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158639, at *7 (N.D. Cal. Sept. 2, 2015). Indeed, the Ninth Circuit has specifically held that a district court errs when it dismisses an "unjust enrichment" claim as "duplicative of or superfluous of" other claims. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).

## III.    CONCLUSION

Plaintiff respectfully asks that the Court deny Defendant's Motion to Dismiss the Complaint. To the extent that the Court determines any claim is deficient, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15.

– 18 –

Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint
*Cogswell v LESSEREVIL LLC*, No. 1:23-CV-00311-ADA-BAM

Dated: June 30, 2023

Respectfully submitted,

GOOD GUSTAFSON AUMAIS LLP
/s/ *J. Ryan Gustafson*
jrg@ggallp.com
2330 Westwood Blvd., No. 103
Los Angeles, CA 90064
Tel.: (310) 274-4663

*Counsel for Plaintiff and the Proposed Class*

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2023, a true and correct copy of this Memorandum was filed with the Court via the Electronic Case Filing System, and was served on all counsel of record through the same means.

/s/ J. Ryan Gustafson

J. Ryan Gustafson, Esq.