UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TWYLSA COGSWELL,

Plaintiff,

v.

LESSEREVIL LLC,

Defendant.

Case No. 1:23-cv-0311-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Plaintiff brings this putative class action alleging that defendant LesserEvil LLC, a Connecticut-based company making snack products, violated California consumer protection labeling laws. ECF No. 13. The first amended complaint alleges that defendant's food labels used deceptive and misleading language, causing plaintiff and others to believe that the products were healthy when in fact they contained unhealthy levels of saturated fat. *Id*. Defendant moves to dismiss the amended complaint. ECF No. 16. I recommend that defendant's motion be granted in part and denied in part.[1]

[1] Defendant previously filed a motion to dismiss, which remains pending. ECF No. 11. In response to that motion, plaintiff timely amended her complaint under Federal Rule of Civil Procedure 15(a)(1). ECF No. 13. Plaintiff's first amended complaint supersedes the original one, mooting defendant's prior motion to dismiss. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997). I thus recommend that defendant's prior motion to dismiss, ECF No. 11, be denied.

**Background**

Defendant is a food and snack company that makes popcorn and puff snacks. ECF No. 13 at 6. Plaintiff alleges that, in the past three years, she has purchased three products made by defendant and sold in California: Himalayan Pink Salt Popcorn, Himalayan Gold Popcorn, and "No Cheese" Cheesiness Paleo Puffs. *Id*. Plaintiff alleges that she believed the products to be healthy because defendant's labels and packaging had language including "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," and "Nutrient Dense." *Id.* at 7. Plaintiff alleges that this packaging is misleading and deceptive, and therefore misbranded, because the products contain high levels of saturated fat, which increases the risk of coronary heart disease.[2] *Id.* at 4 & 10.

The first amended complaint alleges claims on behalf of two punitive classes. ECF No. 13 at 23. On behalf of a California class—consisting of consumers who purchased defendant's products in California—plaintiff alleges claims under the California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), and California's Consumer Legal Remedies Act ("CLRA"). *Id.* at 25-36. On behalf of a nationwide class—comprised of consumers who purchased defendant's products in the United States—plaintiff alleges a claim for unjust enrichment. *Id.* at 36-37.

**Legal Standard**

A party may move to dismiss a case for a lack of subject matter jurisdiction, and such a challenge can be facial or factual. Fed. R. Civ. P. 12(b)(1); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In advancing a facial challenge, as defendant does here, the moving party argues that the allegations in the complaint are "insufficient on their face" to establish federal jurisdiction. *Id*. "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In evaluating such a claim, the court accepts the allegations as true, and the plaintiff need not present evidence outside the pleadings. *Id.*

---

[2] Plaintiff's first amended complaint includes pictures of the products labels, ECF No. 13 at 8-9, which are reproduced in Exhibit A to these findings and recommendations.

A complaint can be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**Analysis**

Defendant argues that plaintiff's claims must be dismissed because: (1) they are preempted by federal law, (2) it is implausible that a reasonable consumer would be misled about the healthiness of defendant's snack products based on their labels, and (3) the pertinent language on defendant's products either constitutes nonactionable puffery or is commercial speech protected by the First Amendment—or both. *Id.* at 24 & 25. Lastly, defendant asserts that plaintiff's claim for injunctive relief should be dismissed for lack of standing. *Id.* at 19.

**I. Preemption**

Defendant argues that plaintiff's state law claims are expressly preempted by federal law because defendant's labels comply with FDA regulations and allowing the claims to proceed would effectively impose additional labeling requirements beyond those required by FDA regulations. ECF No. 16 at 22-23.

A. <u>Statutory and Regulatory Framework</u>

The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits the misbranding of food. In 1990, the FDCA was amended through the passage of the Nutrition Labeling and Education

Act ("NLEA"), which seeks to "establish[] uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014). The NLEA provides an extensive list of conditions under which a food product is considered "misbranded," which are set forth in 21 U.S.C. § 343. Its broad provision provides that food is misbranded if its label is "false or misleading in any particular." 21 U.S.C. § 343(a)(1). The statute also includes several more specific provisions, one of which is relevant here.

Section 343(r) governs statements about nutritional content and health-related information that a manufacturer voluntarily chooses to include on its food label. It regulates labeling claims that "expressly or by implication," "characterizes the level of any nutrient . . . [or] characterizes the relationship of any nutrient disease or health related condition . . . ." 21 U.S.C. § 342(r)(1). Implementing this statute, "[t]he FDA has promulgated regulations regarding three specific kinds of labeling claims: express nutrient content claims; implied nutrient content claims; and health claims." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (citing 21 C.F.R. §§ 101.13, 101.14). "An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1). The regulations define implied nutrient content claims as those that "suggest that a nutrient or an ingredient is absent or present in a certain amount" or "[s]uggest that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." 21 C.F.R. § 101.13(b)(2). The final category, health claims, are statements that "characterize[] the relationship of any substance to a disease or health-related condition" or imply that a "relationship exists between the presence or level of a substance in the food and a disease or health-related condition." 21 C.F.R. § 101.14(a)(1).

"[T]he general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015); *see* 21 C.F.R. § 101.13(b) (nutrient content claims may "not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this

part . . ."). However, the FDA has authorized certain nutrient content claims, including "statements about the amount or percentage of a nutrient that are consistent with the labeling regulations (e.g., 'less than 3 g of fat per serving'), similar statements that include a disclaimer (e.g., 'only 200 mg of sodium per serving, not a low sodium food'), or statements that do not characterize the level of nutrient and are not false or misleading (e.g., '100 calories')." *Reid*, 780 F.3d at 959-60.

B. Federal Preemption Standard

Under the Supremacy Clause, "Congress may expressly preempt state law by enacting a clear statement to that effect." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020). The NLEA states that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) . . . ." State consumer protection laws, such as the UCL, FAL, and CLRA, "are preempted if they seek to impose requirements that contravene the requirements set forth by federal law." *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C 10-4387 PJC, C 10-4937 PJH, 2011 WL 2111796, *8 (N.D. Cal. May 26, 2011) (citing *Wyeth v. Levine*, 555 U.S. 555, 575 (2009)); *see also Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1297 (N.D. Cal. 2003) ("[T]he Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and its amendments implemented through the Nutrition Labeling and Education Act of 1990 ("NLEA"), expressly preempt state laws and claims for relief that seek to impose 'non-identical requirements in the field of food labeling.'").

In enacting the NLEA, Congress specifically provided that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343–1] of the [FDCA]." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364. Accordingly, "preemption only occurs where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA. If a lawsuit asserts that a manufacturer has violated the FDCA (as amended by NLEA) and does not seek to

impose additional or contrary burdens to those imposed under the FDCA, the claims raised under state law are not preempted." *Krommenhock v. Post-Foods, LLC*, 255 F. Supp. 3d 938, 951 (N.D. Cal. 2017); *see also Effinger*, 657 F. Supp. 3d at 1298 ("Where a state law claim attempts to impose the same requirements under federal law, however, [a preemption] problem does not arise."). Conversely, if a state law claim "challenges a labeling statement that has been approved by the FDA under the FDCA, . . . such a claim may be preempted." *Krommenhock*, 255 F. Supp. 3d at 952.

C. Discussion

Plaintiff's claims that defendant's products are misbranded are premised on two theories. First, plaintiff alleges that defendant's use of the term "healthier" violates FDA regulations because the term is an implied nutrient content claim that is made without satisfying the regulatory requirements governing the use of that claim. ECF No. 13 at 17-18. Second, plaintiff alleges that the product's labels are false and misleading under 21 U.S.C. § 343(a)(1) because they include statements suggesting that the food is healthy when in fact it contains dangerous levels of saturated fat.

1. Implied Nutrient Content Claim

Plaintiff alleges that labels for each of defendant's products contain the nutrient content claim that the food is "healthier," as well as "additional health focused nutrient content claims." ECF No. 13 ⁋ 25. She contends that the FDA's regulations prohibit defendant's use of the term "healthier" because its products do to not satisfy 21 C.F.R. § 101.65(d)'s nutritional requirements. ECF No. 13 at 17-18.

As discussed above, an implied nutrient content claim includes statements that "[s]uggest that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices . . . ." 21 C.F.R. § 101.13(b)(2). The term "healthy" may be considered an implied nutrient content claim when "made in association with an explicit or implicit claim or statement about a nutrient." 21 C.F.R. § 101.65(d)(1). If a food product's label uses the term "healthy" or a derivative term as an implied nutrient content claim, the food must satisfy certain conditions for, among other things, saturated fat content. 21 C.F.R. § 101.65(d)(2). "[I]n determining whether

an implied nutrient claim has been made, the court must consider the context of where the challenged claim is made; while the 'magic words' that might create an implied nutrient claim do not need to be directly adjacent to the discussion of a nutrient to create an implied nutrient content claim, there must be connection given the words, their placement, and their context." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 571 (N.D. Cal. 2020) (some quotations omitted).

Plaintiff alleges that the labels for two categories of products—defendant's popcorn products and paleo puffs—violate 21 C.F.R. § 101.65(d). As for the popcorn products, the labels undoubtably contain statements about the product's nutrients.[3] The back, upper-left corner of the popcorn products packaging states, "good source of fiber" and "40% less fat" and "33% more fiber" than "typical oil-popped popcorn contains." ECF No. 13 at 8-9. "Making healthier, less processed, earth-friendly snacking accessible to everyone" appears adjacent to those nutrient claims. This proximity, however, is the only link between the statements about fiber and fat content and the word "healthier." Critically, the context in which the word "healthier" appears on the label undermines plaintiff's contention that the term is used as an implied nutrient content claim—i.e., "made in connection with an explicit or implicit claim or statement about a nutrient)." 21 U.S.C. § 10165(d)(1)(ii). The sentence in which "healthier" appears is more accurately characterized as describing defendant's business ethos rather than a specific nutrient in its product. Indeed, defendant's statement that it is making "healthier" snacking more accessible is not connected to any particular nutrient. As such, defendant's use of the term "healthier" is not an implied nutrient claim. *See Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 797 (N.D. Cal. 2024) (finding that the defendant's use of the word "healthy" was not an implied nutrient content claim where "the label state[d] 'enjoy as a healthy snack but [was] not connected to any particular nutrient . . . ."); *Grausz v. Kroger Co.*, No. 19 Civ. 449 (JLS) (AGS), 2020 WL 12688138, at *5 (S.D. Cal. Mar. 3, 2020) ("The Product's label, however, 'does not state that [the

---

[3] Although plaintiff challenges the labeling for two different popcorn products—Himalayan Pink Salt Popcorn and Himalayan Gold Popcorn—the labels for these two products include the same allegedly misleading statements. Accordingly, I address them together.

Product] is healthy 'because of its nutrient content' or directly link the health claim to any nutrient claim.'").

The same is true for defendant's "No Cheese" Cheesiness Paleo Puffs. The puff product's label contains only two statements that are alleged to be implied nutrient content claims: "nutrient dense" and "healthier." *See* ECF No. 13 at 9. Like the popcorn labels, the term "healthier" appears on the puff snack labels in the statement: "Making healthier, less processed, earth-friendly snacking accessible to everyone." *Id.* Directly underneath, the label states "Organic, grain-free and nutrient-dense, these puffs are minimally processed and packed with organic cassava and sweet potato to satisfy any snack craving." *Id.* at 3 & 9. Even if I were to agree with plaintiff's contention that defendant's use of the term "nutrient-dense" is an implied nutrient claim, and I do not, the label's use of the term "healthier" is not connected to the term "nutrient-dense" or any other explicit or implicit claim about a specific nutrient.[4] *See* 21 C.F.R. § 101.65(d)(1)(ii); 21 C.F.R. § 101.13(b)(2).

Because plaintiff's use of the term "healthier" is not an implied nutrient content claim, federal preemption does not come into play.[5]

2. False or Misleading Labeling

Plaintiff also alleges that defendant's use of the term "healthier" in connection with other health-related claims renders its labeling "false or misleading" in violation of 21 U.S.C. § 343(a).

---

[4] Plaintiff cites *Paschoal v. Campbell Soup Co.* in support of her position that the term "nutrient-dense" itself constitutes a nutrient content claim. No. 21-CV-07029-HSG, 2022 WL 4280645, at *6 (N.D. Cal. Sept. 15, 2022); ECF No. 18 at 16. However, in *Paschoal* the products at issue used "nutrient-dense" language "*in conjunction* with the direct statements" about the amount of protein and fiber in the products. *Paschoal*, 2022 WL 4280645 at *6. Here, the "nutrient-dense" statement exists in isolation without reference to any specific nutrient. *See* ECF No. 13 at 9. More importantly, the allegations specific to the puff snack do not demonstrate that the label's use of the term "healthier" was made as a nutrient content claim—i.e., in connection with a statement about a specific nutrient. *See Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA (MDD), 2022 WL 2441303, *4 (S.D. Cal. July 5, 2022) (assuming "fit" was a synonym of healthy, claim for violation of § 101.65(d) failed because "[p]laintiffs do not plead that the word alone makes any 'explicit or implicit claim or statement about a nutrient'").

[5] As discussed in more detail below, since the amended complaint fails to establish that defendant violated 21 U.S.C. § 101.65(d), plaintiff's claims under the UCL, FAL, and CLRA—to the extent that they are premised on a violation of that regulation—fail.

ECF No. 13 at 15. Unlike plaintiff's other theory of liability, her claims based on labeling that is false or misleading arise under 21 U.S.C. § 343(a), which does not fall under the NLEA's express preemption provision. *See, e.g.*, *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) ("The NLEA's preemption provision does not apply to 21 U.S.C. § 343(a)(1)."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 245 (S.D.N.Y. 2019) ("Notably, the [NLEA's] preemption provision does not mention § 343(a)."); *Manuel v. Pepsi-Cola Co.*, No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply to § 343(a), the FDCA's prohibition on false or misleading labeling.").

The complaint also alleges that defendant's products, including the puff snacks, are misbranded under 21 U.S.C. § 343(a) and California Health & Safety Code § 110660, which both prohibit food labeling that is "false or misleading in any particular." ECF No. 13 at 15. Under 21 C.F.R. § 1.21(a)(1), food labeling is misleading if it fails to disclose facts that are "[m]aterial in light of other representations made or suggested by statement, word, design, device or any combination thereof." Plaintiff alleges that all of defendant's products include language indicating that the products are "healthful, conducive to health, and won't detriment health . . . ." *Id.* at 15-16. Indeed, the statement that defendant is "[m]aking healthier, less processed, earth-friendly snacking accessible to everyone" appears on all the products identified in the complaint. *See id.* at 8-9. Plaintiff alleges that these representations are misleading because the product labels do not disclose "the presence of high levels of saturated fat" and "the increased risk of serious chronic disease likely to result from the usual consumption of its Products." *Id.* at 15-16. Plaintiff's claims based on this separate theory are not preempted. *See Effinger*, 657 F. Supp. 3d at 1299 (declining to dismiss claims concerning non-nutrient content statements that would plausibly "mislead consumers into believing the Product is healthy for them (or healthier than competing products)" where the products' "high levels of saturated fat render it unhealthy or dangerous").

**II. Sufficiency of Plaintiff's UCL, FAL, and CLRA Claims**

Defendant argues that the amended complaint's consumer protection claims should be dismissed because plaintiff's allegations that she was misled by the product labels are not plausible. Defendant contends that the language "healthier," "Good Source of Fiber," "40% Less Fat," "33% More Fiber," "20% Fewer Calories," or "Nutrient Dense," could not plausibly lead plaintiff to conclude that defendant's products contained less than three grams of saturated fat. *See* ECF No. 16 at 7 & 11. Plaintiff responds that defendant mischaracterizes her claims. She argues that her belief was that defendant's snack products were "healthy, healthful, better for her, and a healthier alternative to the competition," and that this belief was based on defendant's claims on its labels, including its explicit use of the word "healthier." ECF No. 18 at 9-10; ECF No. 13 at 7.

Plaintiff's causes of action under California's consumer protection statutes are governed by the "reasonable consumer" standard, under which plaintiff "must show that 'members of the public are likely to be deceived.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). This standard "requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances—not just any consumers." *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 115 (Ct. App. 2011); *see Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).[6]

Whether a business practice is deceptive is an issue of fact generally not appropriate for resolution on a motion to dismiss. *See, e.g.*, *Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007)). The Ninth Circuit has emphasized that, under the reasonable consumer test, it is a "rare situation in which granting a motion to dismiss is appropriate," *Williams*, 552 F.3d at 939, because "it raises questions of fact." *Reid*, 780 F.3d at 958. Accordingly, a reviewing court need only decide whether it is plausible that "'a significant portion of the general consuming public or of targeted consumers, acting

[6] Courts often analyze claims under the three relevant consumer protection statutes together, as I do here. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1064 (N.D. Cal. 2017).

reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation omitted). To determine whether a defendant's labeling would mislead a reasonable consumer, a court must consider the packaging "as a whole." *Freeman*, 68 F.3d at 290; *Weiss v. Trader Joe's Co.*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[P]roduct packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception."). Applying the reasonable consumer standard, I find it plausible that a reasonable consumer could be misled that defendant's popcorn and puff products are healthy despite actually containing dangerously high levels of saturated fats. ECF No. 13 at 7 & 19-21.

Defendant's argument that it is implausible for plaintiff to rely on the challenged statements—e.g, "healthier," "nutrient-dense"—to form a belief that its products' fat content is less than what is disclosed in the Nutrition Facts is unavailing. At the motion to dismiss stage, "the relevant inquiry is not what the consumer actually believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer could believe." *Escobar v. Just Born Inc.*, CV 17-1826-BRO (PJWx), 2017 WL 5125740, at *10 n.5 (C.D. Cal. June 12, 2017). Moreover, "healthy" and its variations are regulated, and courts have recognized that reasonable consumers rely on food products' use of the word "healthy" and its related terms. *See, e.g.*, *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1084 (N.D. Cal. 2017) ("The fact that the FDA regulates the use of the term 'healthy' implies that 'consumers rely on health-related claims on food products in making purchasing decisions,'" and that "how the term healthy will be understood is a question of fact 'ill-suited for resolution on a motion to dismiss.'") (citation omitted); *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1068 (S.D. Cal. 2021) ("[A] reasonable consumer could conclude the term 'healthy' refers to foods that[] are low-fat"). Moreover, the mere fact that the products' labels disclosed the actual saturated fat content in the Nutrition Facts panel does not immunize defendant from consumer protection claims. *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG)(RML), 2010 WL 2925955, at *16 (E.D.N.Y July 21, 2010) ("The fact that the actual sugar content of vitamin water was accurately stated in

an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled.").

The motion's remaining arguments as to why plaintiff's state law claims cannot proceed are similarly unpersuasive. Defendant asserts that the complaint fails to identify any factual misstatements, that the terms "healthier" and "nutrient dense" are nonactionable puffery, and that the challenged statements identified constitute commercial speech protected by the First Amendment. ECF No. 16 at 14 & 24. However, representations "may be deceptive and actionable under the UCL, FAL, and CLRA even though [they are] truthful." *In re Ferrero Litigation*, 794 F. Supp. 2d at 1115; *see also Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985) (The UCL and FAL "have been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public"). While "nutrient dense" is not regulated in the same way as is the term "healthy," courts have recognized that typically non-actionable language could "certainly contribute[] . . . to the deceptive context of the package as a whole." *Jones v. Nutiva, Inc.*, No. 16-CV-00711-HSG, 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016) (quoting *Williams*, 552 F.3d at 939 n.3). And the First Amendment does not protect misleading commercial speech. *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 565-66. Furthermore, courts have concluded that general statements about a food being nutritious do not constitute puffery. *See, e.g.*, *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 969-70 (N.D. Cal. 2022) (collecting cases and concluding that courts "have found that words like 'healthy,' 'nutritious,' or 'wholesome' do not constitute puffery because consumers may rely on those terms").

Here, plaintiff alleges that defendant's packaging, viewed as a whole, led her to believe that defendant's products are "healthy, healthful, better for her, and a healthier alternative to the competition." ECF No. 13 at 4. The amended complaint also identifies specific language and representations that form the basis of those beliefs, and alleges that she relied on those statements. *See* ECF No. 13 at 3-4. At this juncture, taking plaintiff's allegations as true, I cannot conclude that a reasonable consumer would not be misled by defendant's packaging. Accordingly,

defendant's motion is denied as to plaintiff's claims brought under the theory that the product's labels are false and misleading under 21 U.S.C. § 343(a)(1).

However, as discussed above, plaintiff's consumer production claims are also premised on the theory that defendant's products are misbranded because they use the term "healthier" without satisfying the requirements of 21 C.F.R. §101.65(d). As already explained, that regulation is inapplicable because the word "healthier" is not used as an implied nutrient content claim. Accordingly, plaintiff fails to state claims under UCL, FAL, and CLRA based on her theory that defendant's products were misbranded due to its failure to comply with 21 C.F.R. § 101.65(d). *See Ryan v. Good Fat Co.*, No. 22-CV-03391-VC, 2023 WL 2714933, at *1 (N.D. Cal. Mar. 30, 2023) (dismissing claims without leave to amend regarding the phrase "Love Good Fats" where there was no accompanying nutrient content claim).

**III. Injunctive relief under CLRA**

Defendant claims that plaintiff lacks Article III standing to seek injunctive relief pursuant to the CLRA because plaintiff has not demonstrated either "a real and immediate threat of repeated injury" or that "the claimed threat of injury [is] likely to be redressed by the prospective injunctive relief." ECF No. 16 at 25 (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

To have standing to seek prospective injunctive relief under Article III of the United States Constitution, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). The "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted) (citations omitted). In the context of labeling, the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (2018) (citation omitted). As an example of a threat of future harm, the Ninth Circuit provided that a consumer might "be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969-70.

Here, plaintiff alleges that "[i]f she could be assured through prospective injunctive relief that the Products are properly labeled, she would consider purchasing the Products in the future." ECF No. 13 at 7. As defendant points out, the Ninth Circuit has determined, in an unpublished decision, that such a speculative statement does not demonstrate a desire or intent to purchase defendant's products in the future, and is therefore insufficient to confer standing. *In re Coca-Cola Products Marketing & Sales Practices Litigation (No. II)*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) (holding that the plaintiffs' "declarations that they would 'consider' purchasing properly labeled Coke [] insufficient to show an actual or imminent threat of future harm"); *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (finding that a plaintiff lacked standing where the plaintiff would only "consider buying" a product again). Here, plaintiff merely alleges that she would consider purchasing defendant's products in the future if they were properly labeled. She has failed to establish standing to pursue injunctive relief.

**IV. Unjust Enrichment**

Defendant moves to dismiss plaintiff's claim for unjust enrichment on the grounds that plaintiff failed to sufficiently plead her other claims for relief. ECF No. 16 at 25. As explained above, plaintiff has sufficiently alleged that the products' labels contain false or misleading statements. *See infra* Parts I & II. Accordingly, defendant has failed to show that plaintiff's unjust enrichment claim should be dismissed.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. Defendant's motion to dismiss the original complaint, ECF No. 11, be DENIED as moot.

2. Defendant's motion to dismiss plaintiff's first amended complaint, ECF No. 16, be GRANTED in part and DENIED as follows:

a. the motion be granted without leave to amend as to plaintiff's claims challenging defendant's labeling based on the theory that the product label include prohibited implicit nutrient content claims in violation of 21 U.S.C. § 343(r).

b. plaintiff's CLRA claim, which seeks only injunctive relief, be dismissed with leave to amend for lack of standing.

c. the balance of defendant's motion be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: March 7, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**

Lesser Evil
SIMPLE ACTS
CLEAN SNACKS
USDA ORGANIC
PREMIUM QUALITY, MINIMALLY PROCESSED
POPCORN
HIMALAYAN GOLD
WITH BUTTER-FLAVORED COCONUT OIL + HIMALAYAN SALT




100% AIR POPPED
ORGANIC
VEGAN
GOOD SOURCE OF FIBER
40% LESS FAT*
33% MORE FIBER*
20% FEWER CALORIES*
Nutrition Facts
About 4.5 servings per container
Serving size 28g / 3 cups
Calories 120
Total Fat 6g 8%
Saturated Fat 5g 26%
Trans Fat 0g
Cholesterol 0mg 0%
Sodium 100mg
Total Carbohydrate 14g 5%
Dietary Fiber 4g 15%
Total Sugars 0g
Includes 0g Added Sugars 0%
Protein 2g
Vitamin D 0mcg 0%
Calcium 3mg 0%
Iron 1mg 4%
Potassium 72mg 2%
INGREDIENTS: ORGANIC NON-GMO POPCORN, ORGANIC EXTRA VIRGIN COCONUT OIL, HIMALAYAN SALT.
CONTAINS COCONUT.
PRODUCED IN A FACILITY THAT ALSO USES MILK AND EGG INGREDIENTS.
Distributed and Manufactured by: LESSEREVIL BRAND SNACK CO.
41 Eagle Road, Danbury, CT 06810
CHAT WITH THE GURU!
Certified Organic by Baystate Organic Certifiers
MADE WITH NEO packaging to energy
CONNECT WITH THE GURU
LESSEREVIL.COM
Lesser Evil
SIMPLE ACTS
CLEAN SNACKS
Making healthier, less processed, earth-friendly snacking accessible to everyone
We air pop the most tender organic butterfly popcorn, making it noticeably lighter and fluffier than other pre-packaged popcorn. Our popcorn is tumbled in the best oils and sprinkled with Himalayan pink salt – the purest form of salt available.
SIMPLE ACTS, CLEAN SNACKS
We live in a world full of distractions. We can't change that, but we can all find ways to slow down and savor the little moments. It's the small things in life, like sharing stories, smiles, laughter, or even snacks, that make us happiest.
At LesserEvil, we believe that just a few simple acts can make a big difference. By sourcing organic ingredients, using better oils, and practicing sustainability, we're able to make cleaner, tastier, and more environmentally friendly snacks. Focusing on what we can do to be a better company is our small way of contributing to a better world.
We are scrappy – Danbury, Connecticut kind of scrappy. We make it happen at our snack factory where we own EVERY ingredient, recipe, and process. It's an East Coast kind of Zen.
When wellness guides your spirit, you are your own guru.


NUTRIENT DENSE
Nutrition Facts
5 servings per container
Serving size 28g / About 25 puffs
Amount Per Serving
Calories 130
% Daily Value*
Total Fat 6g 8%
Saturated Fat 5g 27%
Trans Fat 0g
Cholesterol 0mg 0%
Sodium 190mg 8%
Total Carbohydrate 19g 7%
Dietary Fiber 1g 4%
Total Sugars 0g
Includes 0g Added Sugars 1%
Protein 0g
Vitamin D 0mcg 0%
Calcium 3mg 0%
Iron 0mg 2%
Potassium 14mg 0%
INGREDIENTS: ORGANIC CASSAVA FLOUR, ORGANIC COCONUT OIL, ORGANIC TAPIOCA STARCH, ORGANIC TAPIOCA SOLIDS, ORGANIC SWEET POTATO POWDER, HIMALAYAN CRYSTAL SALT, ORGANIC NUTRITIONAL YEAST, ORGANIC COCONUT FLOUR, ORGANIC FLAVOR, ORGANIC BAKER'S YEAST EXTRACT, ORGANIC GARLIC POWDER, ORGANIC ONION POWDER, LACTIC ACID, ORGANIC GROUND MUSTARD, ORGANIC SPICES.
CONTAINS COCONUT.
PRODUCED IN A FACILITY THAT ALSO USES MILK AND EGG INGREDIENTS.
Distributed and Manufactured by:
LESSEREVIL BRAND SNACK CO.
41 Eagle Road, Danbury, CT 06810
CHAT WITH THE GURU!
MADE WITH
NEO
packaging to energy
Certified Organic by
8 56762 00746 3
CONNECT WITH THE GURU
LESSEREVIL.COM
Lesser Evil
SIMPLE ACTS
CLEAN SNACKS
Making healthier, less processed, earth-friendly snacking accessible to everyone
Organic, grain-free and nutrient-dense, these puffs are minimally processed and packed with organic cassava and sweet potato to satisfy any snack craving. Once baked, the puffs are tumbled in the best oils and sprinkled with Himalayan pink salt - the purest form of salt available.
SIMPLE ACTS, CLEAN SNACKS
We live in a world full of distractions. We can't change that, but we can all find ways to slow down and savor the little moments. It's the small things in life, like sharing stories, smiles, laughter, or even snacks, that make us happiest.
At LesserEvil, we believe that just a few simple acts can make a big difference. By sourcing organic ingredients, using better oils, and practicing sustainability, we're able to make cleaner, tastier, and more environmentally friendly snacks. Focusing on what we can do to be a better company is our small way of contributing to a better world.
We are scrappy – Danbury, Connecticut kind of scrappy. We make it happen at our snack factory where we own EVERY ingredient, recipe, and process. It's an East Coast kind of Zen.
When wellness guides your spirit, you are your own guru.